No. 12,552.

STATE OF LOUISIANA VS. WILLIAM P. NICHOLLS.

The nine hundred and seventh section of the Revised Statutes making it an offence for any presidents, cashiers or others in the service of chartered banks " to knowingly and wilfully embezzle or convert to his own use the funds of the bank furnishes a complete definition of crime; embezzlement has a technical meaning; without addition is of common use, and the violation of trust or duty, the incident of embezzlement, is implied in the section by the relation it implies, if not states, between the president or cashier and the funds of the bank. Revised Statutes of the United States, Secs. 5209, 5471, 5475, 4596; Second Archbold, p. 560; 120 U. S. 334; 156 U. S. 429; 107 U. S. 866.

It suffices that an indictment for an offence fully defined by the statute follows the words of the statute. 1 Bishop, Criminal Procedure, Sec. 356; Wharton, C. L. 1st., Secs. 334, 362; 32 An. 572; 107 U. S. 669.

This section though from a legislative act of 1821, when all banks in this State existed under special charters, can not be restricted to such banks, but extends to all banks whether holding their franchises under special legislative act or under the general law for the creation of corporations, especially in view of the fact that since 1855 the offence has been part of the crimes code of the State extending to embezzlements by presidents and others in the service of all chartered banks. Acts 1855, No. 120, Sec. 83; Pierce & King's Revisory Legislation of 1852, p. 192, Sec. 48; Act No. 166 of 1855; Revised Statutes, 1870, Sec. 907.

When the charge is that the good character of the accused is testimony to be weighed and considered with all other evidence, and to have the weight to which the jury conceives it entitled, it is not error to refuse further special instructions asked on behalf of the accused that propose to instruct only as to the tendency of character, testimony to benefit the accused under hypothetical phases of the testimony; if special instructions are given they must cover the whole law on the point, and the jury instructed that testimony of the good character of the accused is unavailing against positive testimony of guilt. 3 Rice, p. 607, Sec. 378; 1 Bishop Crim. Procedure, Sec. 489; Thompson on Jury Trials, Sec. 4244; 4 Mason, p. 510.

When the charge is accurate and complete as to the presumption of innocence and its effect as evidence, the conviction will not be set aside because the court in the course of its explanation on another point, i. e., reasonable doubt, stated the jury are not to go beyond the testmony to seek for doubts, must confine themselves to the testimony and not resort to extraneous doubts or circumstances.

The tendency of all authority is to sustain instructions that substantially embody the law applicable to the case, though not in the precise words of the statute or in the frame requested on behalf of the accused, and it is equally clear that repetition of that already substantially charged can not be exacted. 41 An. 677, 605; 37 An. 619; 35 An. 1180, 1058; 37 An. 51.

Instructions asked on behalf of the accused requiring qualifications are properly refused. 35 An. 769, 775.

In explaining " embezzlement " used in this section, it is not error to illustrate the offence for the court to refer to the used methods of proof of general acceptance, nor can such illustrations be understood as changing the statutory embezzlement with which the accused is charged.

State vs. Nicholls.

The cashier of a bank, is in legal contemplation, the custodian of its funds. The Section 907 of the Revised Statutes was designed to punish embezzlements of the president, cashier or others in the service of the bank, whether or not legally charged with the custody of the bank's funds, hence the instruction, reasonably construed, was not erroneous that in the prosecutions under that section the actual custody of the money by the accused must not be shown.

Nor will the verdict be set aside because in explaining the intent to constitute the offence of "wilfully and knowingly" embezzling and converting the funds of the bank, the trial judge stated in effect, that the embezzlement was the fraudulent appropriation of another's property; that the intent of the accused to appropriate to his own use must have existed at the time of the appropriation charged to constitute the offence; that "an act was wilfully done when done without reasonable belief it was lawful;" these and similar expressions of the trial judge announcing with reasonable accuracy the criminal intent essential to the crime.

The refusal to allow a challenge for cause is no ground to set aside the verdict when the juror did not serve and the jury is completed without exhausting the peremptory challenges of the accused. 35 An. 315; 38 An. 480; 43 An. 365.

APPEAL from the Criminal District Court for the Parish of Orleans. *Baker*, J.

---

*M. J. Cunningham*, Attorney General, and *R. H. Marr*, District Attorney, for Plaintiff, Appellee.

---

*Beattie & Beattie*, *T. Marshall Miller*, *Chandler C. Luzenberg*, *Charles Louque* and *Lawrence H. Pugh* for Defendant, Appellant.

---

Argued and submitted January 15, 1898.
Opinion handed down February 23, 1898.
Rehearing refused May 2, 1898.

---

The opinion of the court was delivered by

MILLER, J. The defendant appeals from the sentence following his conviction, on the indictment under Sec. 907 of the Revised Statutes, making it a crime for any president, cashier, officer or person of any bank chartered by this State to embezzle and convert the money belonging to the bank or deposited in it.

The indictment follows the language of the statute and charges that the defendant on the date specified, being president of the Bank of Commerce, a bank chartered by the State of Louisiana, then and there did feloniously, wilfully and knowingly convert to his own use

twenty thousand dollars belonging to the bank and deposited therein. There are numerous bills of exception and assignments of error in the record, and as single propositions are made the subjects of two or more exceptions or assignments, it will be more convenient to deal with the propositions instead of attempting to discuss each bill separately.

It is urged the jury should have been charged there was no law to sustain the indictment, and on the same ground that the judgment should have been arrested. The argument is, that to embezzle and convert to his own use money belonging to the bank or deposited in it, used in our statute or rather Sec. 907 of the Revised Statutes announces no crime. It is supposed the statute is deficient in not setting forth the ingredients of the offence, or to state it another in form, does not define the offence it seeks to create. Embezzle, with or without the usual addition convert to his use, finds its definition in the text-books and is of constant use in the statutes for the punishment of crime. The words have a technical and popular significance and plainly convey the wrongful appropriation of the property of another, by the party entrusted with, or who has possession of it, under some trust, duty or office. With this significance, couched in the appropriate technical terms, embezzle alone, with convert to his own use, is to be found in the crimes act of the United States; notably in the familiar sections of the Revised Statutes dealing with the officials of national banks, as well as in our own criminal code. Revised Statutes, U. S., Secs. 5209, 5439, 5453; Revised Statutes of Louisiana, 1870, Sec. 907; Revisory legislation of 1852, p. 198, Act 1855, p. 120, Secs. 83, 131; Revised Statutes, 1855, p. 149, Sec. 84, of 1870, p. 179; Roscoe, p. 438; 2 Wharton Crim. Law, Sec. 1907; United States vs. Britton, 107 U. S. 666; United States vs. Northway, 120 U. S. 334; Moore vs. United States, 160 U. S. 268. If we correctly appreciate the argument in another aspect, it supposes the statute deficient in legal certainty, because it omits the words that the property embezzled came into the hands of the party in the course of his employment, or by virtue of his office, or other words to show the relation to the property of the party charged. Without these words it is claimed there is no distinction between embezzlement and larceny. The answer to this, we think, is, that the offence of embezzlement, purely of statutory creation, may be constituted without the words the argument exacts as essential.

Such words as describe the relation of the party charged to the prop-erty embezzled, *i. e.*, that it came into his hands by virtue or in the course of his employment, used in connection with embezzle-ment by bank officials, could in strictness be applied only to the cashier, in legal contemplation the custodian of the bank funds. The purpose of our statute was to reach the president, or others in the service of the bank, whether or not the custodian of the funds. Whether the funds embezzled were paid to the president by a debtor of the bank, or taken by the president, or in his hands to be used for the bank, or by whatever mode such funds were in his possession, it was the design of our statute to provide the offence of embezzling such funds by the president, or others in the service of the bank. Hence, the statute in dealing with embezzlements by presidents of banks omits the words used in other sections of the Revised Statutes, in defining the offence generally. It was enough in the view of the lawgiver, to enact, that any president of the bank who embezzles its funds should suffer the prescribed penalty. The terms of the statute necessarily imply funds in his hands as president. The statute, in our opinion, does define the offence, and distinguishes it from larceny. By the terms of the statute, giving to embezzle its recognized significance, the offence of wilfully and knowingly appropriating to his use the funds of the bank by the president, must be deemed to be created.

If Sec. 907 constitutes by its terms a complete offence, then the recognized rule applies, that in indictments for statutory offences it suffices to follow the words of the statute. An exception to the rule is where the common law designation of a crime is employed: then the essentials of that crime must be stated in the indictment. In this case no such designation is used. The statute, complete, as we think, in its statement of the offences, is the guide for the pleader. On this branch of the case our attention is directed to the deci-sion of the insufficiency of an indictment, under a Federal statute, directed against embezzlements of public property by any per-son. It was held under such a statute to be essential the indict-ment should show the relation of the party charged to the property, he is charged to have embezzled. No such relation appeared in that statute, and without that there was nothing to distinguish embezzlement from larceny. Moore vs. United States, 160 U. S. 270. The difference between that and our statute is obvious. The relation

of the bank official to the moneys of the bank is implied in our statute. The statute is directed against the bank president who embezzles the bank's funds. The words imply the essence of embezzlement that distinguishes it from larceny, *i. e.*, that he was in possession as president and embezzled the funds thus lawfully in his possession. In the case cited the court observed that if the statute contains all the elements of embezzlement, no addition is required in the indictment. Not expressly, it is true, but with equal if not greater force by necessary implication, our statute contains that ingredient the argument supposes to be wanting, *i. e.*, that the funds came into the hands of the president as president. Anything more to embrace that element would be mere verbiage. Where nothing is to be added to the statutory definition, it suffices for the indictment to follow the statute, and unsafe to state the offence otherwise. It remains to add the sufficiency of an indictment in the form of that here was maintained by our predecessors. We hold the indictment sufficient. 1 Bishop Crim. Procedure, Sec. 356; 1 Wharton Crim. Law, Sec. 34; State vs. Palmer, 32 An. 572, 574.

It is strenuously insisted by the charges requested, motion to quash and the assignments of error, that Sec. 907 of the Revised Statutes has no application to the accused, because he is president of a bank not chartered by special legislative act, but under the general law. The argument is based on the fact that this section was originally an act of the Legislature of 1821, when all our banks were chartered by special acts, hence, it is argued the section must now be deemed to refer to that class of banks alone, and not to those like the Bank of Commerce organized under the general law. The argument confronts the plain language of the section extending to all chartered banks. But one or two banks still linger under special charters. The result of the argument is, there is no law in Louisiana to reach embezzlements by officials of State banks chartered in the only mode allowed since the prohibition of special charters. Const., Art. 46. We are told to meet this supposed defect in our legislation with the equanimity enforced by the aphorism that the law as written, and not the consequence, is the judicial guide. No court, however, should affirm the result exacted by the argument without the closest scrutiny of the reasoning for the conclusion. The earnestness of the argument has given to the proposition an importance far beyond that of first impression, and induced that consider-

SUPREME COURT OF LOUISIANA.

ation due to the zeal and research of counsel. The distinction made by our laws in reference to the modes of business, and privileges of banks chartered under special acts, and the banks deriving their charter from the general law, have been brought to our notice: thence it has been argued that because only banks holding special charters existed in 1821, therefore the legislation of that year is to carry a limitation on Sec. 907 of the Revised Statutes, and restrict it to the class of banks existing in 1821. Yet that section for almost half a century has been a part of our crimes act embracing all banks, whether chartered by special acts or under the general law. In this connection our attention has been directed to the decision of a District Judge that a penal section of another character · (now Sec. 877 of the Revised Statutes), originally introduced in the free banking act of 1853, was to be restricted to the officials of such banks, and by the same reasoning it is claimed Sec. 907 is to be confined to banks of the earlier class of 1821 when all held by special charters. This decision, we think, entirely omits the control that should have been exerted in the determination of the question arising from the fact that although the provision of the act of 1853 was originally confined to free banks, it afterward became like Sec. 907, a part of the crimes act applying to all banks. It seems to us, in construing a penal or any statute the prominent object in the legislative contemplation must have its influence. We must suppose the Legislature in 1821, proposed to punish embezzlements by bank officials and to provide the legislation for that purpose not only in respect to the banks then existing, but to reach delinquencies of bank officials for all time and all banks. In this view the act of 1821 would have applied to all banks coming into existence afterward by the changed methods of later years. But we think it entirely conclusive against the contention in this respect that this act of 1821, even if limited to one class of banks originally, was incorporated in the crimes act applicable to all banks as early as 1852, was re-enacted in 1855, and again in 1870. Pierce & King's Digest of 1852, p. 192; acts of 1855, No. 166; Revised Statutes of 1855, Sec. 84. We think the motion to quash and the charges on the ground that Sec. 907 of the Revised Statutes did not apply to the Bank of Commerce were properly denied.

It is insisted the charge of the court was not in accordance with

the law in respect to the presumption of innocence. The text writers and decisions exhibit some variance in expression, but none of substance, in stating the presumption of innocence. As one puts it, the law presumes innocence, until the contrary is proved or appears from a stronger presumption; another writer states it thus: as men do not generally violate the criminal code, the law presumes every man innocent, but some do transgress it, and therefore evidence is received to repel the presumption. This legal presumption of innocence is to be regarded by the jury in every case as part of the evidence to the benefit of which the accused is entitled. 1 Greenleaf on Evidence, Secs. 34, 35; Roscoe, p. 14. At the outset of the charge we find the instruction was given to the jury.

" All persons accused of crime are presumed by law to be inno-cent until they are proven to be guilty. The consequence of this rule of law is that they are not required to prove their innocence, but may rest upon the presumption in their favor until it is over-come by positive affirmative proof. It is therefore the duty of the State to establish to your satisfaction beyond a reasonable doubt every essential ingredient necessary to constitute the guilt of the prisoners of the crime charged." We are asked to set aside the verdict in this case on the ground that the instruction did not place the defendant with all the advantage the law secured to him by the presumption of innocence. It is a serious responsibility to disturb the verdict of a jury on the ground of misdirection. It should, undoubtedly, be done when the accused has been deprived by the charge of that correct instruction as to the law to which he is enti-tled. But on reason and authority no court should set aside the verdict in a criminal case because of asserted error in giving to the jury a familiar principle of law, unless the instruction is clearly erroneous. Nor when an instruction which fairly covers the legal principle has been given, should the verdict be disturbed because the trial judge declines to give the same principle in that varied form in which it is requested on behalf of the accused. In what respect does this instruction misstate, or fail to convey to the jury an ade-quate appreciation of the presumption of innocence? Unless we find the substantial basis to hold the instruction deficient or misleading, it is beyond the power of this court to disturb the verdict. After the trial court had thus charged, the following instruction on the same

45

point was asked, which the trial judge refused on the ground his charge was sufficient, and that the instruction was calculated to mislead: "If you find from the evidence that the actions of the accused present a double aspect, one free from crime and the other criminal, and your minds are in doubt on this matter, you are bound, under the law, to lean to that construction and interpretation of the acts of the accused which would make their acts honest and non-criminal, for the presumption of innocence is a conclusion drawn by the law in favor of the citizen, by virtue whereof, when one brought to trial upon a criminal charge, he must be acquitted unless he is proven to be guilty. This presumption of innocence is an instrument of proof created by the law in favor of one accused, whereby his innocence is established until sufficient evidence is introduced to overcome the proof which the law has created. Every reasonable doubt or presumption arising from the evidence must be construed in favor of the accused." The requested charge is, we think, argumentative, that is, goes beyond the statement of the legal principle; proposes to guide the jury in the application of the principle they are to make of the presumption under hypothetical phases of the testimony; but it is difficult to find in the more elaborate charge requested any clearer or fuller enunciation of the presumption of innocence than that expressed in the charge of the court. In the argument to show the insufficiency of the charge it is urged the presumption of innocence is not a mere shield, but a "weapon of offence," and proves innocence until the contrary is established. But this effect of the presumption of innocence is quite as tersely stated in the charge, though the jury are not told that the presumption is both a "shield" and a "weapon" not apt to be understood by them. It is claimed in the argument that the defendant in a criminal case does not rest on the mere presumption of innocence, but "by force of the law that tries him puts in evidence as part of the proof the fact of innocence," and this, it is added, is positive evidence which the law recognizes as introduced in every case and proves innocence till broken down by stronger proof. This is a strong presentation of the presumption in the argument to a court, but in our view would be utterly inappropriate to give to the jury. We do not recognize that the "fact of innocence" is put in evidence. The presumption is not the fact, but disappears with contrary proof. This part of the argument is not persuasive that the law as to the

presumption was not fully given, nor does the argument point out how the charge could have been fairer to the accused. But the argument supposes that the error as to the presumption is made apparent by considering it in connection with the charge as to reasonable doubt. The presumption of innocence and the principle that requires proof beyond reasonable doubt are totally distinct. The objection based on the charge as to reasonable doubt supposed to aid the other objection is, that the trial judge in charging as to reasonable doubt excluded, it is claimed, from the jury, the presumption of innocence. In that part of the charge the jury are told they must not go beyond the evidence to seek for doubts, but must confine themselves to the testimony; and not resort to extraneous facts or circumstances. Doubts of innocence could not arise from the presumption of innocence. The very explicit charge as to that presumption and its effect already given must be deemed to have distinctly impressed the jury they must give that presumption its full weight along with all the testimony in the case. It strikes us as a strained appreciation that in any part of the instructions the jury were told to discard, or in any manner to exclude the presumption from their consideration. The court, in that part of the charge which it is claimed tended to exclude the presumption, was dealing with another subject, and not until the jury had been explicitly charged as to the presumption. The charge in a criminal case must be construed in a reasonable sense, and thus construed, we think the charge as to the presumption not at all weakened by the other instructions relied on in the argument. It is claimed that a recent decision of the United States Supreme Court aids the contention of the defendant. In that case, as we read it, the verdict of the jury was set aside, not for any error in the charge as to the presumption, but because none was given. While there was an elaborate direction as to reasonable doubt, the charge was deficient in not instructing as to the presumption of innocence. The court in that case deemed it proper to distinguish, with great elaboration, the difference between reasonable doubt and the presumption of innocence. In defining the presumption of innocence, the court said it was evidence introduced by the law itself on behalf of the accused, and again, " that it was an instrument of proof which the court were bound to consider." This language the argument emphasizes as illustrating the deficiencies in

the charge in this case. The Supreme Court in that case is not defining the charge to the jury. It uses the language to show the difference between reasonable doubt and the presumption. The pertinence of the decision, too, is affected by the point at issue. In that case there was no instruction as to the presumption. Here, that instruction was given. In the opening of this charge there is the clearest statement, as we think, of the presumption of innocence, followed by an equally distinct expression, that as a consequence the accused was not required to prove innocence, but entitled to rest on the presumption until overcome by positive affirmative proof, and this is followed by the explicit language that the State must prove beyond a reasonable doubt every ingredient to constitute guilt. On the most careful consideration we are unable to appreciate the ground for complaint of the defendant on this part of the charge, and hold that the exception to the charge on this point, and to the refusal of that requested, afford no basis on which we can set aside the verdict of the jury.

A large portion of the discussion has been directed to the instruction given and that refused as to the character of the defendant. On this subject the court charged that good character is to be considered just as any other fact in the case; is to be weighed and considered as any other evidence; "and to have such weight as the jury should deem it entitled to under all the evidence in the case." The charge left to the jury the bearing and weight of the testimony, omitted any expression as to the deductions they should draw, and this is, we think, consonant with the spirit of our law, that submits to the jury exclusively the effect of testimony and confines the judge to instructing them on the law. R. S., Sec. 991. It is strenuously contended the court should have gone further, and defined the appropriate weight of character testimony in hypothetical phases of the evidence. We are asked to set aside the verdict on the ground substantially, that the charge denied to the defendant the benefit that would have been derived from a different instruction of the weight of character. The jury, it is insisted, should have been told explicitly the weight and effect of good character, and to give it that effect when proved. The text writers, examining the value of character testimony in criminal prosecutions, recognize its usefulness in doubtful cases, and affirm the competency of the testimony in all cases. Such testimony it is stated, may tend to create a doubt

in favor of the accused, or remove a doubt against him; but with singular unanimity the authorities are to the effect, that testimony of good character is useless against clear evidence of guilt, and any special instruction to juries as to character testimony must convey the qualification, that if the jury are satisfied by positive evidence of the guilt of the accused, character testimony is wholly unavailing. We find the principle thus stated substantially, in the text-books and Mr. Rice's book on Criminal Evidence, may be accepted as the type of all authority on the point. Section 378 *et seq.*, p. 607; Thompson on Jury Trials, Sec. 244, pp. 17, 99; 1 Bishop Crim. Pro., Sec. 489; and in our own reports we have, State vs. Garic, 35 An. 970. As intimated in some of the text-books, and obvious to the common mind, a special charge as to good character with the quali- fication that must accompany it, would be apt to impress the jury more against than in favor of the prisoner. The trial judge states he thought it fairer to the accused to give the general proposition that the jury should give to the proof of good character the weight they conceived should be attached to it under all the circumstances of the case. It is impressive too that the special instructions were not asked in that form in which they must have been given, we think, if given at all. The special instructions asked were: " Good character when proved may create reasonable doubt and operate an acquittal, no matter what the proof." Again the charge was asked: " If the jury, from the evidence, are in doubt as to what the intent of the accused in doing certain acts, or a series of acts, you have a right, in arriving at a conclusion on this point, to take in consideration and weigh the character of the accused, and if you find that prior to the doing of the act charged, the accused bore a high character for hon- esty and integrity in the community in which he lived—you are to weigh this fact and to give the accused the benefit of it. Character, under certain phases of the case at bar, tends to create a doubt which otherwise might not have existed in favor of the accused, or to remove a doubt already existing against him. You should look upon it as a part of the whole evidence adduced upon the trial and it is an important factor in coming to a conclusion, when you have doubt as to the innocence or guilt of the accused." The trial judge refused both charges on the ground he had charged sufficiently as to character, and he could not give either of the requested instructions without qualification, and because they tended to mislead and con-

fuse the jury. The first of the requested instructions, we presume, is not insisted upon. But in the argument, the last, it is contended, should have been given. It is quite true that the instruction does not assume the effect of any evidence before the jury but the hypo- . thetical form of the statement will not of itself, make an instruction proper. This charge is not the mere statement of a legal principle. It is argumentative; its tendency is all in favor of the accused and does not present that principle in respect to character testimony the State is entitled to insist upon. It is often that some allusion to the facts accompanies the instruction as to the law, but in all cases it is exacted that the instruction shall not assume the facts as proved or take the form of an argument. Aside from the form in which the instruction is framed, it seems to us there is the more serious objection already stated. The instruction is not a full statement of the law. The instruction announces only the tendency of character testimony to favor the accused. No instruction as to the bearing of character testimony would be complete that did not instruct that such testimony could not avail against positive testimony of guilt. It is, we think, too clear for discussion, that if special instructions are given on any subject, the whole and not part only of the law is to be given, least of all, that part only that operates in favor of the defendant. 3 Rice, Sec. 378, p. 607. It is equally clear that if the requested instructions require explanation or qualification they should be refused. State vs. Riculfi and McClung, 35 An. 775; State vs. Phil. Jackson, 35 An. 769. It is our conclusion the instructions asked were properly refused. The instruction the court gave on the bearing of proof of good character was, in our view, sufficient to secure to the defendant the full benefit of that species of proof. The further instructions asked on his behalf, in our view, could not have been given with due regard to the rights of the State and settled jurisprudence.

In the discussion here, the argument has assailed the explanation of the trial judge as to the character of the reasonable doubt. Following the explicit charge that the State must prove every ingredient of guilt beyond a reasonable doubt, the court charged: " This doubt must be a reasonable one, that is, one founded upon a real, tangible and substantial basis, and not upon a mere caprice, fancy or conjecture. It must be such a doubt as would *induce* action without hesitation in an important matter by reasonable men in the exercise of an ordinary yet

prudent judgment. It must be such a doubt as would make you *feel* you had not an abiding conviction as to the prisoner's guilt. If after giving a fair and impartial consideration to all the facts in the case, you find the evidence unsatisfactory upon any point indispensably necessary to constitute the prisoner's guilt, this would give rise to such a reasonable doubt as would justify you in rendering a verdict of not guilty. You are not permitted to go beyond the evidence to seek for doubts, but must confine yourselves strictly to a dispassionate and impartial consideration of the testimony given upon the trial. You should not resort to extraneous facts or circumstances in reaching your verdict." We have carefully considered the objection to this part of the charge. The expression is questioned in the argument, that it "must be such a doubt as would induce action without hesitation in an important matter by reasonable men, in the exercise of ordinary but prudent judgment." The comment is that the reasonable doubt is not that which induces, but that which deters action. Between the doubt that deters, and that which induces action, the difference is metaphysical. Taking this whole charge, we do not think it could have been misunderstood by the jury. We should find it extremely difficult on this ground to set aside this verdict, and the difficulty in thus setting it aside would not be as serious as giving a satisfactory reason for it.

It is urged in support of one of the exceptions that the court erred in defining the offence. The court instructed that the indictment was based on Sec. 907 of the Revised Statutes, embodied in his charge: that embezzlement was the fraudulent appropriation of property by the person to whom it was entrusted; that the intent must be fraudulent; that by criminal intent, the law means the intent to do an act forbidden by law; that this intent imparts to the act the character of an offence, and that an act was wilfully done when done without reasonable belief it to be lawful. It is contended that as the offence was statutory, the charge was erroneous in not instructing that the evidence must show defendant was one of the persons mentioned in the statute, and had knowingly and wilfully converted to his own use the money of the bank, and the argument insists that the trial judge defined not the offence for which the defendant was on trial, but some other. It seems to us that the recital to the jury of the entire Sec. 907 of the Revised Statutes: the statement the defendant was on trial for that

offence, and that the State must prove every allegation of the indictment which reproduced the statute, must be deemed to give the jury full instruction that the evidence should show the defendant was president of the bank, and had knowingly and wilfully converted its funds. We can not appreciate that this verdict is to be set aside because the jury were not expressly told they must find that the defendant was president of the bank, nor on the ground they were not sufficiently instructed that to convict they must find he wilfully and knowingly embezzled and converted its funds. While embezzlement is a statutory offence, it has the significance generally accepted of the appropriation of the property of another by the person to whom it is entrusted, with the intent to appropriate, or as it is sometimes expressed, for the purpose of applying it to his own use. This is the substance of the definition we find in all the books, accompanied by such adjectives as felonious, wrongful, or fraudulent. If the trial judge defined embezzlement at all, in our view he must have given substantially the definition we find in this charge. We therefore can not appreciate that the charge is erroneous in its definition, but seems to us to convey with substantial accuracy the elements of the offence with an apt explanation of embezzlement, the leading word in the section. It is strenuously urged that "fraudulent," used in the charge, is not the equivalent of the adjective employed in the section. The reading of the section and the statement that was the offence for which the accused was on trial apprised the jury the act must have been committed "knowingly and wilfully." It seems to us "wilfully and knowingly" appropriating another's property might well be qualified as "fraudulent" or wrongful without misleading the jury or varying the issue they were to try. Again, it is claimed that "wilfully" was not correctly stated to the jury. The word is often used in the sense of the commission of an unlawful act, with knowledge it is unlawful. "Without reasonable ground for believing the act to be lawful" is one of the definitions given by Abbot, taken from a Wisconsin decision. This knowledge and a purpose to do wrong is given in one of the cases. The trial judge stated that to do an act forbidden by law without reasonable belief it was lawful, was to do it wilfully. Between doing an unlawful act, knowing it to be unlawful, and doing it without reasonable belief it is lawful, is a difference of words. We do not perceive that in this respect the accused has any cause to

complain of the charge. It is insisted, too, that the trial judge erred in referring to the usual proofs of embezzlement in defining the offence. The examples of these proofs given by the trial judge were those found in the text writers in illustrating embezzlement, *i. e.*, false accounts by the party charged, his refusal to account, or his concealment of the funds entrusted to him. 2 Archibold, p. 455. We find no error in the references by the trial judge to the proofs usually administered to support the charge. It is contended, too, that the court erred in its instruction that to constitute the offence under Sec. 907 the actual custody of the funds by the bank officer charged was not essential. The law deems the cashier the custodian of the bank's funds. Morse on Banks and Banking, p. 156. The idea conveyed by this part of the charge is that the section extends to every officer of the bank who embezzles the bank's funds, whether or not the legal custodian. Whether the president or any officer of the bank comes into the possession of the bank's funds by payment from the bank's debtor, or takes the funds or obtains possession in any other mode, and appropriates the funds to his own use, he is brought within the scope of this section. Hence, the omission in the section of the words " which he shall receive in the course of his employment," to be found in Sec. 905, applicable to embezzlement or other fiduciary relations. We think the trial judge' was correct in thus explaining the nature of the offence created by Sec. 907. The State vs. Palmer, 32 An. 565. We have thus given attention to the supposed omissions and misdirections in the charge defining the offence. The law denouncing embezzlements by bank officials was fully stated; the jury were told the intent to do the act forbidden without reasonable belief it was lawful, was the intent required to convict; were further instructed that the intent to appropriate at the time of the appropriation must have existed to constitute the offence. In addition to the general instructions we find the charge: " If you are convinced the accused embezzled or wrongfully converted to their own use the money of the bank, it will be your duty to convict," accompanied with the direction adapted as we gather from the bills to affirm the defence proved, relied on by the accused if in the opinion of the jury that defence was maintained by proof thus. "If, on the other hand, you find that though the money of the bank was taken by the accused, or either, that it was not embezzled or wrong-

fully converted, but was drawn for the benefit of the bank, and was so used, it will be your duty to acquit." We can not resist the conclusion that these instructions as to the character of the offence were all the accused could reasonably expect. Our courts have repeatedly affirmed that the charge in its entirety and not isolated parts is the test of its sufficiency. If verdicts were to be set aside under that rigid criticism that finds fault with a word or phrase, not the precise adjective or form of expression used in the statute creating the offence, few verdicts would stand. If the instructions to juries fairly construed according to the appreciation of reasonable men to whom they are supposed to be addressed are substantially correct, the law is satisfied. On the fullest examination of this part of the case we find no basis to disturb the verdict.

Another exception was reserved to the refusal to charge: "If the jury are satisfied that the accused concealed the fact of the withdrawal of the funds of the bank from the directors or any of them, but still used the funds for the benefit of the bank, they are not guilty of embezzlement or conversion." The court in refusing this charge stated: "This charge was requested by the attorney for J. A. DeBlanc. I think it fully covered by the general and special charges given. To have given it as set forth in the bill, would have narrowed the issue before the jury to a question of concealment. The only question was whether the defendants had used the money for their own benefit, or for the benefit of the bank. I think the charge confusing and misleading." The objection to the requested charge is well stated by the trial judge. Concealment is usually the accompaniment, but is not itself crime. The requested instruction tended to confine the attention of the jury to one only of the elements of the offence. The reason assigned for the requested instruction was that the judge had virtually instructed that concealment of the drawing of the money proved guilt. We do not so understand the instructions to the jury. The part of the charge supposed to call for the requested instructions is, we presume: " The usual evidence given of the embezzlement is, that having received the money he denied the receipt of it, or did not account for it when he ought, or accounted for other money and not for it, or rendered false accounts or practised some other deceit in order to prevent detection, from which the jury might fairly infer that the defendant either actually disposed of the money or withheld it from his em-

ployer with intent to do so, which seems to be the meaning of em-
bezzle. In order to constitute the crime it is necessary there should
be criminal intent. No man should be punished as a criminal unless
his intent is to do wrong." We do not understand that these gen-
eral references to the " usual proofs " laid down in the main in the
text-books as ordinarily administered in prosecutions for embezzle-
ments had any tendency to announce to the jury that concealment
in itself proved guilt.

Our attention is directed to the exception to the overruling of the
defendant's challenge for cause to a juror on the ground that he had
formed a fixed opinion in respect to the charge against the defend-
ant. The juror was subjected to a long examination both by the
State and by the counsel for the defendant, stated that he had
heard the subject discussed, had a prejudice against bank officers
arising from the then recent bank troubles, would carry that preju-
dice with him into the jury box, first said he would require the accused
to prove their innocence, but changed that statement; the juror made
other answers, some favorable and others unfavorable to his com-
petency, but on his final examination by the judge stated he could
try the case impartially and give his verdict on the testimony. The
whole tendency of our jurisprudence is to test the fitness of the
juror, not by his expression in answering one or more questions, but
by his answers in their entirety, and great influence in determining
his competency is exerted by his final answer to the trial judge.
State vs. Jones, 38 An. 792; State vs. Jackson, 36 An. 96. We should
be inclined to hold the ruling correct, but even if not, it would afford
the accused no ground of complaint. The judge states in signing
the bill that the juror did not serve, because challenged peremptorily,
that when the juror was challenged the accused between them had
twenty-three peremptory challenges left, and that no complaint was
made afterward that either was compelled to accept an obnoxious
juror. The judge adds that many of the juror's answers were due to
his confusion caused by his lengthy cross-examination, but the
examination of the whole satisfied the judge the juror was compe-
tent. The fact, however, the juror did not serve, and the panel was
obtained without any complaint afterward of other jurors, and, as we
understand the statement of the judge, without exhausting the per-
emptory challenges, removed any cause of complaint against the
ruling. State vs. Farrar, 35 An. 315; State vs. Melton, 37 An. 77;
State vs. Egan, 37 An. 368; State vs. Redmond, 37 An. p. 774.

The trial judge stated to the jury that the accused under our law had the right to testify in their own behalf, but if they do not avail themselves of this right their failure shall not be construed for or against them. This is the substance of Act No. 29 of 1886, which adds " the judge shall so charge the jury." It is insisted the judge had no right to allude in any manner to the fact the defendant did not testify, and because he did so, we must reverse the verdict. We can not take that view. We find in the briefs two decisions, one by the New York Court of Appeals that the presiding judge has no right to allude to the fact the prisoner had not availed himself of testifying as permitted by their statute; another of the Supreme Court of Illinois, that no presumption against the prisoner arises from his failure to testify under their statute, and the trial is to be conducted on the same presumption as if the statute had not been passed. We doubt, however, whether in either State such an allusion as that made here would vitiate the verdict. In Wilson vs. United States, 149 U. S. 60, the prosecuting officer in the course of his address to the jury commented with great severity on the fact the defendant did not go on the stand though entitled to do so under the act of Congress. 149 U. S. 60. We do not think that decision sustains defendant's contention directed against the statement of the judge. The directions in the act of 1886 " the judge shall so charge " were designed to exclude from the minds of the jury any inference unfavorable to the accused arising from his not testifying. In our view the statement of the judge in this respect furnishes the accused no basis for complaint.

We presume the bill we find in the record bringing up a newspaper article, attributing to the District Attorney remarks on the trial of the case in the lower court, is not pressed. For obvious reasons we could not notice the bill, and the District Attorney states, in addressing the jury, he made no remarks beyond the line of his duty.

The bills of exception are numerous. There are assignments of error besides. The discussion has not followed or dealt with the bills of assignment separately, but rather with the issues raised. The case has received close and earnest attention at our hands. We believe the case in all its aspects has been fully considered; that, at least, has been intended by us. The restricted province of this court is to deal only with the questions of law, and they have been ably

discussed by counsel. But with all the aid of the argument in support of the contentions on behalf of defendant, the conclusion we reach is the record shows no ground to reverse the sentence.

It is therefore ordered, adjudged and decreed that the sentence of the lower court be affirmed.

Rehearing refused.

WATKINS, J., concurs.

BREAUX, J., dissents.

NICHOLLS, C. J., took no part.