ST. PAUL, J.
 

 The appellants, W. W. Scarbrock and Willie Scarbrock, his son, were charged with the murder of one Ed. Hastings, and were convicted of manslaughter. They reserved eleven bills of exception; of which Nos. 1, 2, 3, and 11 are not now urged.
 

 I.
 

 Bills 4, 5, 6, and 7 all relate to the same matter, to wit, the refusal of the trial judge to permit defendants to introduce evidence of alleged prior threats by the deceased against the accused.
 

 The statutory law and fixed jurisprudence of this state are that, “in the absence of proof of hostile demonstration or of overt act on the part of the person slain or injured, evidence of his dangerous character or of his threats against accused is not admissible.” Code Cr. Proc. (Act No. 2 of 1928), art. 482; State v. Brown, 172 La. 121, 133 So. 383, and authorities.
 

 And the proof of such overt act or hostile demonstration must be to the satisfaction of the trial judge, subject, however, to review by this court. State v. Brown, supra.
 

 In this case the defendants did not show to the satisfaction of the trial judge that there was any overt act or hostile demonstration on the part of the deceased; nor to ours. Evidence of alleged prior threats by the deceased against the accused was therefore inadmissible.
 

 As we read the record, the deceased and one James Oglesby were riding in a truck be
 
 *51
 
 longing to the deceased along a public road which passed by the home of the accused. One Marion Brown, whose wife was sister to the wife of the elder accused, and who, at the request of the two sisters, was on his way to try to dissuade him from carrying out threats of violence against the deceased, but had not yet come to the accused, testified that the two accused were standing on their front porch with their shotguns by them; that, as the truck approached, both accused came out hastily to the road with their guns in their ¡hands; that the younger accused signaled foi the truck to stop; that he (the witness) was then about 75 yards in front of the on-coming truck; that the truck stopped, and the accused immediately commenced firing into it, killing Hastings, who was driving the truck, and seriously wounding Oglesby, who sat beside him on the front seat. Oglesby, who recovered and was a witness at the trial, testified that the truck was signaled and did stop, and that the shooting commenced as the truck stopped.
 

 Both of the accused testified that they were in front of their home preparing to leave in a car which stood there; that the truck stopped without being signaled to do so; that the deceased at once began cursing the elder accused and put his right hand behind him in a way to indicate that he was about to draw a pistol either from his pocket or from the seat of the truck; whereupon the accused shot in defense of their lives.
 

 Counsel for the accused argues that Brown was not in a position to see what Hastings was doing before the accused shot him. To this the trial judge says that there was nothing to keep Brown from “seeing all he testified to,” and that the position and direction of the bullet holes in the truck corroborated his testimony. Counsel argues that Oglesby was not in a position to see what the deceased was doing just prior to the shooting, and lost consciousness immediately
 
 after
 
 the first shot, by which he was wounded. Of him, too, it may be said that he was in a position to see all he testified to; which was that the truck was flagged down and immediately fired into. Wherefore the trial judge .was “convinced that there was no overt act, and was obliged to disbelieve the testimony of the Scarbrocks, because it was clearly shown by the oral and physical evidence to be unreasonable.” And we find no error in the conclusion thus reached.
 

 II.
 

 Bill No. 8 was reserved as follows: The witness Brown testified that immediately after the homicide he asked the elder accused “why had he killed the old man (meaning Hastings),” to which he answered, “Well, I haven’t killed enough of them yet.” This Was apparently ( not objected to, and could not have been; the charge being one of murder, and such evidence being admissible for the purpose of showing malice. State v. Poole, 156 La. 434, 100 So. 613.
 

 This was followed by evidence given by the sheriff to the effect that about an hour after the homicide the accused, then in custody, on seeing a truck approach, asked for his gun, which the sheriff (of course) refused to give him. The bill does not disclose what the state had in view by this testimony; but it is obvious that it could have been intended for no other purpose than to superadd evidence of malice, express malice, against some one. Thereupon, when the elder accused was
 
 *53
 
 on the stand, he was asked
 
 why
 
 he had asked for the return of his gun; hut the answer was excluded for a variety of reasons which .are wholly beside the point at issue; which was whether the accused had the right to explain, if he could, that he had asked for the return of his gun for defensive, and not for offensive, purposes.
 

 The accused should have been allowed to answer, the trial judge restricting the examination and answers to that issue solely. But in the case at bar the ruling, though erroneous, was harmless, for the answers of the witness, which are annexed to the bill, fail to show that he had any such purpose in mind, and that he was merely attempting to bring before the jury the wholly irrelevant details of an encounter between his children and those of the deceased, which had taken place the night before. And, moreover, although tried for
 
 murder,
 
 the accused were expressly acquitted of
 
 maUae
 
 by the verdict of manslaughter, which is “the unlawful killing of another
 
 without malice either express or invplied.”
 
 29 Corp. Jur. 1122, Verbo, Homicide, § 110. And convictions in criminal cases are not to be set aside for harmless errors. Code Cr. Proc. art. 557.
 

 III.
 

 Bill No. 9 deals with a very slight matter. The accused was asked whether he was not in bad humor on the morning of the homicide, and answered that he was; but he was not allowed to explain
 
 why
 
 he was in bad humor. The whole matter was entirely irrelevant ; and the intended explanation was precisely the irrelevant details of the trouble of the night before as mentioned above.
 

 IV.
 

 Bill No. 10. The accused sought to show that “the Hastings (meaning the deceased and his family)” owned a pistol, which “they” had left for three weeks at the house of a certain witness, and had come back for it two or three months before the homicide. And the trial judge properly excluded such evidence as irrelevant.
 

 Decree.
 

 For the reasons assigned, the judgment appealed from is affirmed.
 

 O’NIEDL, O. J., dissents from the ruling on bills 4, 5, 6, 7.