LAND, Justice.
 

 Defendant is charged with the murder of Earl Wilkinson, in the parish of Tangi-pahoa, on the 1st day of September, 1936. He was found guilty as charged, without capital punishment, by the jury, and was sentenced to imprisonment in the state penitentiary for the term of his natural life.
 

 On appeal, the defendant relies, for the reversal of his conviction and sentence, upon numerous bills of exceptions reserved in the court below.
 

 Bill of Exception Ño. L
 

 During the selection of the jury, a juror was asked on his voir dire by counsel for defendant if he was not the first cousin of an attorney assisting in the prosecution. After answering in the affirmative, the juror was challenged by.the defense for cause on the ground of his relationship to the attorney. ,
 

 The court ruled that the juror was competent.
 

 Relationship to the district attorney, or associate counsel for the State, is not one of the grounds enumerated in article 351 of the Code of Criminal Procedure as cause for which a juror may be challenged. Besides, the juror answered on his voir dire that the fact of his relationship to associate counsel would not influence him in arriving at a verdict in the case, and the State offered to excuse 'the juror by consent, before the bill was reserved.
 

 This bill does not show that, at the time of the challenge of this juror for cause, defendant’s peremptory challenges
 
 *771
 
 had been exhausted before the completion of the panel. Article 353 of the Code of Criminal Procedure.
 

 The bill is therefore without merit.
 

 Bill of Exception No. 2.
 

 A juror was asked by the State if he had a fixed opinion, and replied in the affirmative. The juror was then submitted by the State, and counsel for defendant asked him the following question:
 

 “Q. You stated that the opinion you had would probably yield to the evidence. Now, Mr. Stewart, could you take the testimony produced on this stand and" try this case and disregard what you heard about it, if that is the law and the Court instructs you to do that?”
 

 “A. There is a doubt in my mind.”
 

 The trial judge then excused the juror for the reason that he had a fixed opinion.
 

 This ruling, in our opinion, is correct, as the juror did not state on his voir dire that his opinion would yield to the evidence in the case, or that it could be changed, but that it “would
 
 probably
 
 yield” to the evidence, and that there was
 
 "a doubt”
 
 in his mind. Code of Criminal Procedure, art. 351, subd. 1.
 

 Bills of Exceptions No. 3 and No. 9.
 

 Counsel for defendant propounded to a juror on his voir dire the following question :
 

 “Q. Would you hesitate to take the life of your assailant, if you were assailed, and your life appeared to be in imminent danger?”
 

 This question was objected to by the State as not a proper question, as it called for the opinion of the juror on a statement of facts th^t might not exist.
 

 This objection was sustained by the trial judge, “for the reason that counsel for defendant refused to state the proposition more clearly. This juror was subsequently asked the correct question and qualified, and no bill was reserved by either side”.
 

 In bill of exception No. 9, the following question was propounded by counsel for defendant to a juror on his voir dire:
 

 “Q. The question of self-defense is not what it appears to you as a juror sitting in the jury box, but how it. appeared to the defendant, and, if the danger appeared to the defendant to be imminent and to be about to inflict upon him great bodily harm or attempt on his life, he can act to the extent of taking the life of his adversary. Will you take the law as given you by the Court, and if it appears to you under the circumstances that the defendant was possessed of a real imminent fear of bodily harm or an attempt on his life, and he acted in defense of his life, will you give him the benefit of any doubt that might get into your mind?”
 

 The district attorney objected to the statement of the law of self-defense made by counsel to the jury, on the ground it is not what appears to the defendant, but to a reasonable man, under the circumstances. The court sustained the objection,
 
 *773
 
 stating, at the time, that it was a question of law, and that the court would give the law to the jury.
 

 In his general charge, at pages 106 and 107 of the transcript, the trial judge gave to the jury a clear and correct charge as to the law of self-defense, and it is the duty of the jury to accept and apply the law as laid down for them by the judge.
 

 It is well settled that, if there be
 
 at the time
 
 an actual physical attack or hostile demonstration of such a nature as to afford
 
 reasonable ground
 
 to believe that the design is to destroy life or commit a felony on the person assaulted, the killing of the assailant will be homicide in self-defense. State v. Chandler, 5 La.Ann. 489, 52 Am.Dec. 599; State v. Peterson, 41 La.Ann. 85, 6 So. 527.
 

 If from the acts, declarations, and conduct of the deceased,
 
 at the time,
 
 the accused had
 
 reasonable ground
 
 to believe himself in immediate danger of loss of life or of great bodily harm, he has the right to defend himself without further delay, though it should afterwards appear that there was no danger at all. State v. Joseph, 45 La.Ann. 903, 12 So. 934; State v. Garic, 35 La.Ann. 970.
 

 Though the law does not demand of the defendant the same coolness and judgment in estimating his danger that can be exercised by the jury in reviewing the circumstances of the encounter, yet whether such
 
 reasonable grounds
 
 existed is a fact for the determination of the jury. State v. Garic, 35 La.Ann. 970.
 

 We find no error in the ruling complained of by defendant.
 

 Bill of Exception No. 4.
 

 Article 354 of the Code of Criminal Procedure provides that: “In all trials for any crime punishable with death, or necessarily with imprisonment at hard labor, the defendant shall be entitled to challenge peremptorily twelve (12) jurors, and the prosecution twelve (12). In all other criminal cases the defendant shall have six (6) peremptory challenges and the State six (6).”
 

 After the State had peremptorily challenged six talesmen, and, acting under article 354, sought to challenge the seventh juror, defendant objected on the ground that this article was unconstitutional, as it was substantive legislation. This objection was overruled, and properly so, since this court held, in State v. Elmore, 179 La. 1057, 155 So. 896, that the article in question was constitutional, as it related to matter which is purely procedural, citing Constitution of 1921, article 21, section 1-a, as amended, see Act No. 262 of 1926.
 

 The bill is without merit.
 

 Bill of Exception No. 5.
 

 Counsel for defendant propounded the following question to a juror on his voir dire:
 

 “Q. Mr. Smith, the law of self-defense is every man has a right to protect his person or body from an unwarranted attack which is designed to inflict bodily harm and an attempt at your life, if you were confronted with such an attack would you hesitate
 
 in acting to defend your property
 
 and to the extent of taking your adversary’s life?”
 

 
 *775
 
 The State objected to the question' as not a correct definition of the law of self-defense. The record fails to show that this objection was sustained, and the juror answered :
 

 “I would kill a man if he was going to kill me, if I thought he was going to, or came at me with something I thought he might kill me with.”
 

 Counsel for the defense then propounded to the juror
 
 on
 
 his voir dire the following question:
 

 “Mr. Smith, if you were confronted with an attack by a man much greater in size and one you knew would beat you, and that it appeared to you that he was about to inflict great bodily harm, would you hesitate in taking his life in defense of your person ?”
 

 This question was objected to by the State as not a fair question and the proper statement of the law, and also as calling for the opinion of the juror. The objection was sustained by the court, and counsel for defense reserved a bill.
 

 In the face of the fact that the trial judge, after hearing all the witnesses in the case, found that the testimony failed to establish an overt act or hostile demonstration upon ihe part of deceased at the time of the killing, the law of self-defe'nse as defined in the question propounded to the juror was based upon an assumed state of facts that did not exist, and therefore had no application to the facts of the case. Besides, proof of disparity in the size and strength between prosecutor and accused is not admissible, unless there has been a prima facie case of self-defense laid by defendant, or such evidence has been preceded by proof that the prosecutor was the attacking party. State v. Broussard, 39 La.Ann. 671, 2 So. 422; State v. Giroux, 26 La.Ann. 582.
 

 The ruling was correct.
 

 Bill of Exception No. 6.
 

 During the examination of the tegular venire, Charles Black, Jr., who was on the regular list of jurors which was served upon the defendant, was called for examination, but failed to answer, because hé was temporarily absent from the courtroom. The regular venire was subsequently exhausted. Talesmen were drawn and subpoenaed for service in the case, and, upon resuming the trial, Charles Black, Jr., had returned to the courtroom and was again called for examination.
 

 Counsel for defendant objected to using any of the regular venire, because “The' venire was 'exhausted yesterday and new talesmen were called.” The trial judge overruled the objection, stating that they were absent when they were called.
 

 Charles Black, Jr., “qualified perfectly upon his examination,” as stated in the per curiam to this bill; and, after counsel for defendant urged his objection, he accepted the juror without hny attempt to challenge him, or without any protest; and, at the time he was accepted; the defendant had several challenges left.
 

 We find no error- in the' ruling of the trial judge.
 

 
 *777
 
 Bill of Exception No. 7.
 

 This bill is not mentioned in either the brief of the defendant, or in that of the State, and must be considered as waived.
 

 Bills of Exception Nos. 8 and 10.
 

 In bill No. 8, while the jury was yet
 
 incomplete,
 
 the State peremptorily challenged the juror, Hilburn, who had already been examined on his voir dire and accepted as a juror. Objection to the State’s challenge was made by counsel for defendant on the ground that the juror had already been accepted and sworn, and the objection was overruled.
 

 The State relies upon article 358 of the Code of Criminal Procedure, which reads as follows:
 

 “The jurors shall be tendered first to the prosecution, and, if accepted, then tendered to the defense. After a juror has been accepted by both sides, neither side has the right to challenge him peremptorily, but it shall be within the discretion of the court, and not subject to review to allow either side to peremptorily challenge jurors
 
 up to the time that the jury is
 
 impaneled."
 

 As the jury had not yet been impaneled at the time the peremptory challenge was allowed by the trial judge, his ruling was correct.
 

 In bill No. 10, it appears from the recitals therein made that, after a jury of twelve had been selected and duly sworn, the State, over the objection of the defense, was permitted to challenge perempto•rily a juror named Kennon.
 

 The trial judge held that either side had a right to challenge a juror peremptorily up to the time of taking the testimony. The ruling of the judge a quo is stated too broadly, in our opinion, and needs qualification.
 

 If it should appear in any case that, at the time the State peremptorily challenged a juror, the panel was complete, and the defendant had exhausted his peremptory challenges and was compelled, because of the State’s challenge, to accept an obnoxious juror, we would not hesitate to set aside the conviction and sentence in such a case, as both prejudice and injury to the defendant would be clearly shown,
 

 But, in the instant case, it is not stated by defendant, in either bill of exception No. 8 or in bill of exception No. 10, that defendant’s peremptory challenges had been exhausted, and that he was forced, by the peremptory challenges allowed the State, to accept an obnoxious juror.
 

 Nor does defendant pretend, in either of these bills, that, by his ruling, the trial judge allowed the State more peremptory challenges than are allowed by law. Had he done so, it would have been reversible error, and a new trial would have to be granted to defendant. State v. Earle, 24 La.Ann. 38, 13 Am.Rep. 109; State v. Gay, 25 La.Ann. 472; State v. Everage, 33 La.Ann. 120. But the fact is that the district attorney exhausted his last peremptory challenge against the juror, Kennon, as shown by his statement: “We have one other challenge and want to challenge Mr. Kennon.” Tr. p. 45. The record fails to
 
 *779
 
 disclose that any additional peremptory challenge was allowed the State
 
 by
 
 the trial judge in this case.
 

 Defendant, therefore, has shown no injury as a result of the ruling of the trial judge.
 

 This court has repeatedly held that, in order to justify the appellate court in reversing a verdict, there must be shown not only error, but injury or prejudice as a consequence. State v. Marsalise, 172 La. 796, 135 So. 361; State v. Flattmann, 172 La. 620, 135 So. 3; State v. Colombo, 171 La. 475, 131 So. 464; State v. Ricks, 170 La. 507, 128 So. 293; State v. Jones, 169 La. 291, 125 So. 127; State v. Cullens, 168 La. 976, 123 So. 645.
 

 This jurisprudence has been adopted by the framers of the Code of Criminal Procedure in article 557 of that Code, which reads as follows:
 

 “No judgment shall be set aside, or a new trial granted by any appellate court of this State, in any criminal case, on the grounds of misdirection of the jury or the improper admission or rejection of evidence, or as to error of any matter of pleading
 
 or procedure,
 
 unless in the opinion of the court to which application is made, after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, is prejudicial to the substantial rights of the accused, or constitutes a substantial violation of a constitutional or statutory right.” .
 

 Under the circumstances of this particular case, the ruling of the trial judge is sustained.
 

 Bills of Exception Nos. 11 and 12.
 

 In these bills, defendant objected to testimony offered by the State to show that, after the shooting, no weapon was found, upon the person of deceased, the objection being that what was done was out of the presence of the defendant. This objection was overruled. A State witness testified that, when he and Dr. Farmer arrived at the scene of the homicide, Dr. Farmer suggested that witness raise the wounded man up. This witness had testified that he helped to lay deceased down when he was shot and removed some of his clothing.
 

 On cross-examination by counsel for defendant, the witness testified as follows:
 

 “Q.
 
 You know whether he was armed? Of your own knowledge from what you felt and saw, did he have a gun ?
 

 “A. I didn’t see anything. Not even a pocket knife.
 

 “Q. If he had had one on him could you have seen it?”
 

 Counsel for defendant then objected to this line of testimony and the objection was overruled. Tr. p. 48.
 

 The burden is not on defendant to prove his plea of self-defense, but on the State to prove that the homicide was not in self-defense, as a homicide committed in self-defense is justifiable and not felonious, and the State must prove its feloniousness beyond a reasonable doubt. State v.
 
 *781
 
 Scarborough, 152 La. 669, 94 So. 204; State v. Ardoin, 128 La. 14, 54 So. 407, Ann.Cas.1912C, 45; State v. Varnado, 128 La. 883, 55 So. 562; State v. Herring, 131 La. 972, 60 So. 634.
 

 There can be no doubt that the fact that deceased was unarmed, at the time of the homicide, tends to prove that the killing was felonious, and, as the State must prove that it was felonious beyond a reasonable doubt, evidence to show that deceased was not armed, when killed, is clearly relevant, material, and admissible.
 

 Bills of Exceptions Nos. 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, and 25.
 

 These bills, from 13 to 25, inclusive, were reserved to the court’s ruling that, as no overt act or hostile demonstration upon the part of the deceased, at the time of the killing, had been first proved, evidence as to any prior altercation or previous threats made by the deceased against the accused was inadmissible.
 

 The trial judge states, a? the reason for his ruling, that the testimony proved that, at the time of the actual killing, the deceased was standing about ten feet from the accused, making no advances, threats, or hostile demonstration towards the accused; that the killing of deceased was entirely unnecessary, uncalled for, and appeared to the court as having been a coldblooded murder; that the defense relied upon a plea of self-defense, and the State proved beyond any manner of doubt that no such thing as self-defense existed in the case.
 

 In determining whether sufficient foundation has been laid for the introduction in a murder case of evidence of the deceased’s dangerous character, or of his previous threats against the accused, the trial judge has the discretion of passing on the credibility of the witnesses and the sufficiency of the evidence, and his rulings will not be reversed unless manifestly erroneous. State v. Dreher, 166 La. 924, 118 So. 85; State v. Beck, 46 La.Ann. 1419, 16 So. 368; State v. Ford, 37 La.Ann. 443.
 

 In State v. Jones, 175 La. 1066, at page 1069, 145 So. 9, it is said:
 

 “From the Ford Case, 37 La.Ann. [443] 460, down to the present time, it has been uniformly held by this court that, in passing upon the question of prior threats of the deceased, the trial judge must of necessity be clothed with the authority to decide whether a proper foundation has been laid for the proffered evidence; that such authority necessarily includes the discretion to ignore and not consider testimony which his reason refuses to believe; and that
 
 mere evidence
 
 of such hostile demonstration, as distinguished
 
 from proof
 
 thereof, is insufficient. State v. Sandiford, 149 La. 933, 90 So. 261, and authorities there cited.
 

 “It is also well settled that: ‘The term “overt act,” as used in connection with prosecutions for murder where the plea of self-defense is involved, means any act of the deceased which manifests to the mind of a reasonable person
 
 a present intention
 
 on his part to kill defendant or do him great bodily harm.’ State v. Brown, 172 La. 121, 127, 133 So. 383, 386;
 
 *783
 
 State v. Williams, 46 La.Ann. 709, 15 So. 82; State v. Stewart, 47 La.Ann. 410, 16 So. 945; State v. Fontenot, 50 La.Ann. 537, 23 So. 634, 69 Am.St.Rep. 455.”
 

 In State v. Scarbrock, 176 La. 48, at page 50, 145 So. 264, 265, it is said:
 
 “The-statutory law and fixed jurisprudence of this state
 
 are that, ‘in the absence of proof of hostile demonstration or of overt act on the part of the person slain or injured, evidence of his dangerous character or of his threats against accused is not admissible.’ Code Cr.Proc.(Act No. 2 of 1928), art. 482; State v. Brown, 172 La. 121, 133 So. 383, and authorities.” (Italics ours.)
 

 “And the proof of such overt act or hostile demonstration must be to the satisfaction of the trial judge, subject, however, to review by this court. State v. Brown, supra.” See, also, State v. Washington, 184 La. 544, 166 So. 669.
 

 Also, evidence is not admissible as to previous difficulties or altercations, unless. defendant lay a proper foundation therefor, by first showing a hostile demonstration or an overt act on the part of the accused, at the time of the killing. State v. Williams, 155 La. 9, 98 So. 738; State v. Joiner, 161 La. 518, 109 So. 51; State v. Smith, 171 La. 452, 131 So. 296.
 

 The deceased was a young man nineteen years of age, and was killed by the defendant, who is an officer of the town of Kentwood, and a deputy sheriff of the parish of Tangipahoa and who was armed with a pistol at the time of the homicide,'
 

 The testimony clearly shows that, at the time of the shooting, which occurred' at 8:30 p. m., in front of the Corner Café in Kentwood, deceased was unarmed, and did not have on his person even a pocketknife. As deceased and several companions approached the defendant, he ordered deceased to go back across the street, and immediately fired two shots from his pistol at deceased, who was fatally wounded, and ran across the street and fell on the sidewalk.
 

 Not a single witness in the case has sworn that deceased attempted to draw a weapon, at the time of the shooting, except the defendant, who testified that when he told the deceased to go back across the street he kept coming, “And he threw
 
 his hands in his pockets,
 
 when he did that I shot one time, and he swerved
 
 and he came out with his gun,
 
 and swung around this way facing the café,
 
 and I shot him in the side here,
 
 and he swung around and back directly across the street.
 
 Mr. Wilkerson
 
 and Champ was standing in the middle
 
 of
 
 the street, and Earl (deceased) as he went by
 
 he handed Albert Chapman the gun,
 
 and run on across and run in the Pool Room
 
 and Mr. Wilkerson following him over there.
 
 Mr. Wilkerson didn’t go in the Pool Room, he stood on the outside.” Tr. p. 183.
 

 Albert Chapman, called in rebuttal, testified as follows:
 

 “Q, Mr. Chapman, it has been testified that after Earl Wilkerson was shot he ’ crossed the street and handed you a gun. What have you to say as to that?
 

 “A. That is not true.
 

 
 *785
 
 “Q. Where were you when he was shot?
 

 “A. I was standing about three or four feet in front of him.
 

 “Q. In which direction did he run?
 

 “A. The opposite way ninety degree angle away from me.
 

 “Q. You had been with him. Had— did he have a gun at that time ?
 

 “A. I didn’t see a gun on him.
 

 “Q. Did you see him run over there? Did you watch him ?
 

 “A. Near about to the pool room.
 

 “Q. Did he run past anybody?
 

 “A. I never noticed anybody in the street.
 

 “Q. In what condition was his hands, or what position were his hands, while he was running ?
 

 “A. Just like that, across his chest.
 

 “Q. Did you see anybody hand anything after he was shot.
 

 “A. No, sir.” Tr. pp. 196, 197.
 

 W. W. Wilkinson, father of deceased, testified, in rebuttal, that he was not an eyewitness to the shooting, but was between Newman’s store and the I. C. Railroad when the gun was fired, and did not hear the shots; that he came on back up Main street, and, as he was crossing that street, he stopped to. see what the excitement was about. Tr. pp. 188, 189.
 

 Doc Lambert, a State witness, testified that when he got to the body of deceased, who was then alive, Dr. Farmer suggested that “we raise him up.” The witness testified that he removed some of the clothing, and that he did not see any gun, not even a pocketknife. Tr. p. 48.
 

 The defendant is thoroughly impeached as to his testimony that deceased drew a pistol at the time of the killing. This testimony was not accepted as true, either by the trial judge or by the jury, nor can we accept same as credible, in reviewing the evidence in this case, offered to prove an overt act or hostile demonstration on the part of the deceased, at the time of the killing, as a foundation for the introduction of evidence as to previous threats and former altercations, offered by defendant.
 

 In the absence of proof of an overt act or hostile demonstration at the time, all such evidence was properly excluded by the trial judge, as well as evidence to show that deceased, on several occasions and some time before the killing, carried a pistol on his person.
 

 Suffice it to say that, in the altercation between deceased and defendant, about thirty minutes before the shooting, although language offensive to defendant was used by deceased, no assault was committed or blow was struck by either of them.
 

 Bills of Exceptions Nos. 26, 27, and 30.
 

 Article 480 of the Code of Criminal Procedure provides that: “Evidence of the good character of accused is always admissible in his behalf, and must be considered in connection with and as a part of
 
 *787
 
 the whole testimony and due weight be given it, but it can not destroy conclusive evidence, of guilt;
 
 and such evidence must be restricted to showing character as to such moral qualities as have pertinence to the crime
 
 with which he is charged.”
 

 In bill No. 27, a defense witness was asked by counsel for defendant the following question:
 

 “Q. Mr. Catha, a man’s reputation in his community is what people generally say and think about him. Have you ever had occasion to hear anyone discuss Mr. Thorn-hill’s reputation?
 

 “A. No, sir, I never did.
 

 “Q. Have you ever heard anything said against him?”
 

 Objection was made by the State that,, if witness had not heard his reputation discussed, he was not competent to discuss his reputation, and the objection was sustained.
 

 This is a murder case, and, under article 480 of the Code of Criminal Procedure, counsel for defendant was restricted to evidence of the good character of defendant as to such moral qualities as have pertinence to the crime of murder, and should have asked the witness if he knew the general reputation of defendant as being a quiet, peaceable, and law-abiding citizen in the community in which he lived.
 

 So, in a prosecution. for murder, testimony as to the good reputation of accused for peace and quiet in his community is admissible, but not testimony as
 
 to-
 
 his reputation for truth and veracity, or for honesty or trustworthiness. State v. Banks, 138 La. 1090, 71 So. 194; State v. Griggsby, 117 La. 1046, 42 So. 497; State v. Bessa, 115 La. 259, 38 So. 985.
 

 As article 480 of the Code of Criminal Procedure is a statutory requirement, restricting proof of character to such moral qualities as have pertinence to the' crime charged, a defendant is bound by such restriction, and, in a murder case, must ask the witness if he knows the general reputation of the accused as being a quiet, peaceable, and law-abiding citizen in the community in which he lives.
 

 To hold otherwise would make the statute a dead letter, and permit proof of the general reputation of the defendant as good, without any pertinent restriction whatever, thereby enabling a defendant to evade the statute, and still get before the jury proof of his good character.
 

 For these reasons, the ruling of the trial judge is sustained.
 

 Bill of exception No. 26 is also without merit. Arthur Duson, a witness for defendant,
 
 who had testified to his
 
 reputation, was asked the question, if it isn’t a fact that you told Mr. Thornhill (defendant) that you could not work with him unless he quit drinking? Counsel for defendant then made the following
 
 cmd only
 
 objection: “I object to it unless you give some specific time and place.” The objection was overruled, and the witness answered: “On one occasion a dance,- he was drinking. I found out and I told him he would have to cut that out.” Tr. p. 84.
 

 
 *789
 
 In bill No. 30, the defendant under cross-examination by the State was asked the question: “As a matter of fact, she is in the hospital because you gave her a heating so she couldn’t testify in this case?” Counsel for defendant objected to the question as an attempt to prejudice the minds of the jury. The objection was overruled, as defendant was on cross-examination. A bill was reserved. The witness answered: “No.” Page 85.
 

 Where accused voluntarily offers evidence to prove his good character, and then opens the door for contradiction, the State may tender, in rebuttal, proof of his had character, the more so when the inquiry is upon cross-examination of witnesses for the defense. State v. Farrer, 35 La.Ann. 315.
 

 A witness testifying to the good, character of accused may properly be examined as to particular facts, in, order to test the soundness of his opinion and the data upon which it is founded. State v. West, 43 La.Ann. 1006, 10 So. 364; State v. Pain, 48 La.Ann. 311, 19 So. 138; State v. Le Blanc, 116 La. 822, 41 So. 105; State v. Green, 127 La. 830, 54 So. 45; State v. Oteri, 128 La. 939, 55 So. 582, Ann.Cas.1912C, 878.
 

 “When a person accused, or a husband or wife becomes a witness, such witness shall be subject to all the- rules that apply to other witnesses, and may be cross-examined upon the whole case.” Code Cr.Proc. art. 462.
 

 If a defendant becomes a witness in his own behalf, he thereby subjects his testimony to impeachment and puts his credibility at issue like any other witness. State v. Suire, 142 La. 101, 76 So. 254; State v. Quinn, 131 La. 490, 59 So. 913.
 

 We find no error in the ruling of the court.
 

 Besides, the law is that evidence of good character is unavailing against proof of guilt beyond a reasonable doubt. State v. Nicholls, 50 La.Ann. 699, 23 So. 980; State v. Pete, 153 La. 943, 96 So. 818; article 480 of Code of Criminal Procedure.
 

 Bills of Exception Nos. 28, 29, 31, 32, and 33.
 

 After the State had cross-examined the defendant upon threats which had been excluded from the evidence, counsel for defendant reoffered his testimony and that, of other witnesses, which had also been excluded from the evidence, on the ground that there was no proof of an overt act or hostile demonstration at the time of the killing.
 

 This evidence was offered:
 

 First, as part of the res gestae;
 

 Second, to show who was the aggressor;
 

 Third, to show the absence of malice on the part of the defendant; and
 

 Fourth, as corroborative of the testimony of threats and violence against the life of the defendant.
 

 As stated by the trial judge in his per curiam, this testimony of previous threats
 
 *791
 
 and a previous altercation had been previously presented in support of bills of exception Nos. 13 to 25, both inclusive, and was excluded by the court for the reason that no overt act or hostile demonstration at the time of the actual killing had been established.
 

 Under the jurisprudence and authorities, the ruling of the court was clearly correct.
 

 The reoffer of this testimony was objected'to, at the time, by the State:
 

 First, because there had been no evidence to prove an overt act or hostile demonstration on the part of the deceased at the time of the killing;
 

 Second, because anything happening twenty or thirty minutes before the killing would not be a part of the res gestae;
 

 Third, because there is no testimony of any threats before the jury, there .could not be any corroborative testimony of any threats; and,
 

 Fourth, because the testimony of Albert Chapman, Champ Yarborough, and Grover Harrell, witnesses of the State, corroborated by the testimony of other witnesses, proved conclusively that the accused, Estus Thornhill, was the aggressor, and that the deceased, as he stood unarmed, was shot down in cold blood by the accused, without even a chance to run for his life.
 

 These objections were sustained by the trial judge, and properly so, in our opinion.
 

 Bills o.f Exceptions Nos. 34 and 35.
 

 Bill of exception No. 34, was reserved to the refusal of the trial judge -tó give to the jury special charge No. 3, requested by defendant.
 

 This charge reads as follows:
 

 “3. — Gentlemen of the jury,
 
 it is your duty to consider the evidence that the deceased was a quarrelsome, desperate and revengeful man
 
 together with the other evidence, and if this evidence with the other evidence causes a reasonable doubt to arise in your mind, then it is your duty as jurors to acquit the accused.”
 

 As this bill does not annex any evidence to show that deceased was a quarrelsome, desperate, and revengeful man, the special charge was not applicable to the facts of the case. Besides, in the absence of proof of an overt act or hostile demonstration, at the time of the killing, evidence as to the dangerous character of the deceased is not admissible.
 

 Article 384 of the Code of Criminal Procedure provides that:
 

 “It belongs to the jury alone to determine the weight and credibility of the evidence, but the judge shall have the right to instruct the jury on the law
 
 but not upon the facts of the case,”
 
 as he was requested to do in the special charge in question.
 

 The judge must not charge on the facts, draw any conclusion from them, or assume that any fact has been proved.
 

 The bill is without merit
 

 
 *793
 
 In bill No. 35, defendant objected to the first part of the charge on the ground that the illustrations given were comments on the evidence in the case. The first part of the charge relates to the crime of murder, and covers a page and a half in the transcript. Pages 102 and 103.
 

 Defendant does not specify, in his objections, the particular illustrations of which he complains. However, the first part of the charge contains the following:
 

 “Malice is either expressed or implied. By express malice the law means an actual intention to kill, which intention is manifested by external circumstances capable of proof. For instance, - where it is established that a person lay in wait for his victim; where the accused had made previous threats against the deceased; - where there existed between the parties former grudges; when a party arms himself beforehand, etc., or any other fact, susceptible of proof, which shows a preconcerted scheme to carry out the unlawful purpose.
 

 “Implied malice is where the killing is malicious, but where there are no external signs of premeditation beyond the mere fact of the killing,, for instance, where there was nO' just ground for it, when the killing was without provocation, or upon so slight provocation as not to justify it, malice is then implied. It is also implied in any deliberate cruel act committed by any person against another.
 

 “If a man, armed with a deadly weapon, such as a pistol, should suddenly, and with little or no apparent cause or provocation, shoot and kill another, the law would presume that such a killing was malicious, for no one would commit such a cruel act unless acting under the influence of malice. That is what the law means by implied malice.
 

 “The killing under the influence of either malice would be murder.”
 

 The evidence in this case is not referred to in his charge in the slightest manner by the trial judge, and the illustrations used in the charge are of the usual and most general character.
 

 It is well settled that statements in a charge by way of illustration are not comments on the facts. State v. Obregon, 10 La.Ann. 799; State v. Nicholls, 50 La.Ann. 699, 23 So. 980; State v. Rice, 159 La. 820, 106 So. 317.
 

 The special charge was properly refuséd.
 

 The conviction and sentence appealed from are affirmed.
 

 PONDER, J., recused.
 

 HIGGINS, J., absent.