307 So.2d 587 (1975)
STATE of Louisiana
v.
Tommy IVY.
No. 55226.
Supreme Court of Louisiana.
January 20, 1975.
Rehearing Denied February 21, 1975.
*589 L. G. Campbell, Bossier City, M. F. Fayard, Jr., Gordon & Fayard, Shreveport, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Charles A. Marvin, Dist. Atty., Henry N. Brown, Jr., Asst. Dist. Atty., for plaintiff-appellee.
SANDERS, Chief Justice.
The Bossier Parish Grand Jury indicted the defendant, Tommy Ivy, for the second degree murder of David Cook. After trial, the jury found defendant guilty of manslaughter. The trial judge sentenced him to imprisonment for a term of nine years.
The defendant has appealed, relying upon eight bills of exceptions for the reversal of his conviction and sentence.

BILLS OF EXCEPTIONS NOS. 1 AND 3
The defendant reserved Bill of Exceptions No. 1 to the overruling of his motion to quash the indictment on the ground that women were unconstitutionaly excluded from the jury bodies, including the grand jury.
The procedure followed in the trial court was that set forth in Article 7, Section 41 of the Louisiana Constitution (1921) and Article 402 of the Louisiana Code of Criminal Procedure.
Article 402 of the Louisiana Code of Criminal Procedure provides:
"A woman shall not be selected for jury service unless she has previously filed with the clerk of court of the parish in which she resides a written declaration of her desire to be subject to jury service."[1]
The defendant attacks the constitutionality of the above article, as well as the basic state constitutional provision, on the ground that it arbitrarily discriminates against women. He relies upon Healy v. Edwards, 363 F.Supp. 1110 (La.1973), a decision of a three-judge panel in the lower federal court system now being reviewed in the United States Supreme Court.
In Hoyt v. Florida, 368 U.S. 57, 82 S.Ct. 159, 7 L.Ed.2d 118 (1961), the United States Supreme Court upheld a Florida statute similar to the Louisiana provision. We have often stated that we will follow Hoyt v. Florida, supra, the last authoritative expression of the United States Supreme Court, until that court has again spoken on the question. See State v. Davis, La., 284 So.2d 896 (1973); State v. Womack, La., 283 So.2d 708 (1973); and the cases therein cited.
Bill of Exceptions No. 3 also concerns the exemption of women from jury service under the above procedure. When the name of Sammie Johnson was called for jury service, the trial judge announced that she was a female and excused her. The judge had previously stated for the record that she had requested to be excused, claiming her exemption. Tr. 176. Defense counsel objected on the ground of the unconstitutionality of the women's exemption procedure. We, of course, have already *590 disposed of this contention. The defense also argues, however, that evidence should have been taken on the juror's status. Defense counsel made no assertion at the time, nor does he assert now that the prospective juror was not an exempt female. He complains only of the absence of an evidentiary hearing.
The trial judge has broad discretion in excusing prospective jurors prior to the time they are sworn to try a particular case. LSA-C.Cr.P. Art. 783. Since no one challenged the accuracy of the trial judge's knowledge of the juror at the time, no voir dire examination or evidence was required. We find no abuse of discretion.

BILL OF EXCEPTIONS NO. 2
Bill of Exceptions No. 2 was reserved to the overruling of a motion for a new trial. The motion for a new trial reurged all bills of exceptions reserved during the trial, but also alleged that there was "no evidence to prove the required element of intent."
We find more than ample evidence of intent in the record. Hence, the additional allegation lacks merit.
In connection with this bill, defendant makes various contentions in this court as errors patent on the face of the record or errors "discoverable by a mere inspection of the pleadings and proceedings." See LSA-C.Cr.P. Art. 920.
The defendant contends that a unanimous verdict of the twelve jurors was required. Concededly, the verdict was not unanimous.
LSA-R.S. 14:30.1 provides that the penalty for second degree murder is imprisonment at hard labor for life. Article 782 of the Louisiana Code of Criminal Procedure provides that cases in which the punishment is necessarily at hard labor shall be tried by a jury of twelve, nine of whom must concur to render a verdict.
Hence, defendant's contention that a unanimous verdict is required lacks merit. The statute requires only the concurrence of nine jurors.
Defendant further contends, however, that "The record fails to disclose that nine agreed to the verdict."
Article 812 of the Louisiana Code of Criminal Procedure provides in part:
"If, upon polling all of the jurors, the number of jurors required by law to find a verdict answer `Yes,' the court shall order the clerk to record the verdict and the jury shall be discharged. If, upon polling all of the jurors, the number required to find a verdict do not answer `Yes,' the jury may be remanded for further deliberation, or the court may declare a mistrial in accordance with Article 775."
The minutes of the court recite only: "After due deliberation, the jury returned to the courtroom in the presence of the accused with the following verdict: `We, the Jury, find the accused, Tommy Ivy, guilty of manslaughter. Signed, Russell M. Hendrix, Foreman.' The verdict is ordered recorded. Defendant is remanded for sentence."
Defendant asserts, however, that the transcript of evidence shows that only eight jurors concurred in the verdict. Assuming, without deciding, that we can go beyond the minute entry and into the transcript in our review, we note that the transcript shows merely that three jurors voted for acquittal, eight for conviction, and that the response of one of the jurors, Hendrix, was inaudible on the recording machine when the evidence was transcribed. Hendrix, of course, was the foreman who had signed the guilty verdict. The circumstance that the court reporter could not understand the foreman's response on the recording device is insufficient to overcome the presumption that the trial judge and foreman complied with the law in returning and recording the verdict. This *591 conclusion is reinforced by the fact that defense counsel, at whose behest the jury was polled, did not challenge the jury verdict at the time.
We conclude that the bill of exceptions is without merit.

BILL OF EXCEPTIONS NO. 4
Defendant reserved this bill of exceptions when prospective juror Baumaker sought to be excused from service on the ground that he was in the military service. After inquiring about his military duties, the trial judge concluded that no undue hardship would result from his jury service and declined to excuse him.
Persons in military service are not exempt from jury duty. See LSA-C.Cr.P. Art. 403.
Article 783 of the Louisiana Code of Criminal Procedure vests broad discretion in the trial judge in excusing prospective jurors for undue hardship. We find no abuse of discretion here.

BILL OF EXCEPTIONS NO. 5
The defendant reserved Bill of Exceptions No. 5 after the trial judge overruled the defense challenge for cause of prospective juror Catalano. The defense later excused him with a peremptory challenge.
The voir dire examination disclosed that the juror's daughter, a married woman, was employed as a secretary in the private law office of one of the Assistant District Attorneys. (That Assistant District Attorney did not participate in the trial of the present case.)
The juror was examined extensively by the State, the defense, and the trial judge, himself. He testified consistently that the employment of his married daughter would not influence him in arriving at a verdict.[2]
Article 797(3) of the Louisiana Code of Criminal Procedure provides for a challenge for cause when an employment relationship between the juror and the district attorney is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict. This provision is inapplicable here since the employment is that of the juror's married daughter. Article 797(2) is the governing provision. It provides for a challenge for cause when the juror is not impartial, whatever the cause of the partiality.
The trial judge is vested with broad discretion in determining the impartiality of jurors. His ruling on a challenge for cause will not be disturbed in the absence of clear showing of an abuse of discretion. State v. Willis, 262 La. 636, 264 So.2d 590 (1972). We find no abuse of discretion in the present ruling.

BILL OF EXCEPTIONS NO. 6
The defendant reserved Bill of Exceptions No. 6 to the introduction in evidence of two photographs of the victim, S-4 and S-5, showing his bullet wound. The defense objection was based upon the assertion that the photographs had no evidentiary value and, because of their gruesome nature, would unduly prejudice the defendant.
We have examined the photographs. Although all photographs of a *592 dead victim are unpleasant, we do not find them excessively gruesome. They show no large accumulation of blood. Rather, they show a wound near the victim's left eye and the rear of his head. The Coroner identified the front wound as the point of entry and testified that he removed the bullet from the rear of the victim's head.
These photographs had probative value to show the nature and location of the wound. See State v. Fallon, La., 290 So.2d 273 (1974); State v. Gibson, La., 271 So. 2d 868 (1973).
We conclude that they were admissible. Hence, this bill of exceptions lacks merit.

BILL OF EXCEPTIONS NO. 7
The defendant reserved Bill of Exceptions No. 7 after the trial judge overruled his objection to the State's use of the Grand Jury testimony as a basis for crossexamination of Alicia Ivy, the 18-year-old daughter of defendant, a defense witness. In allowing the use of the testimony, the court ordered that a copy of the transcript be made available to defense counsel. During the cross-examination, the Assistant District Attorney referred to the witness's Grand Jury testimony twice. The transcript was not introduced in evidence.
The ground of the defense objection was that the Grand Jury testimony was confidential and could not be used by the State in conducting its cross-examination.
The objection was well-founded. Our law makes the proceedings of the Grand Jury secret, and testimony taken before the Grand Jury cannot be used in a trial, other than a prosecution for perjury. The purpose of this rule is not to protect a defendant or witness at a subsequent trial, but to encourage the free disclosure of information about crime. LSA-C.Cr.P. Arts. 431, 434, 440, 441; State v. Terrebonne, 256 La. 385, 236 So.2d 773 (1970).
It is not every error, however, that requires a reversal of the conviction. The law does not require a perfect trial.
Article 921 of the Louisiana Code of Criminal Procedure provides:
"A judgment or ruling shall not be reversed by an appellate court on any ground unless in the opinion of the court after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, is prejudicial to the substantial rights of the accused, or constitutes a substantial violation of a constitutional or statutory right."
We have reviewed the entire record made part of Bill of Exceptions No. 2. The evidence of guilt is overwhelming, consisting of the testimony of at least seven eye-witnesses. The State's use of the Grand Jury testimony in cross-examination was most limited. That use was restricted to a single witness, the daughter of the defendant. A copy of the testimony was made available to defense counsel. Under all the circumstances, it does not appear to us that the error resulted in a miscarriage of justice.
No constitutional right is involved. We find no substantial violation of any other right of the defendant.
We conclude that the bill of exceptions contains no reversible error.

BILL OF EXCEPTIONS NO. 8
In the cross-examination of a character witness for the defendant, over a defense objection, the State was allowed to ask him whether he had knowledge of certain previous incidents of violence of the defendant. The defendant argues that the cross-examination was improper.
We find no error in the ruling. The cross-examination of a character witness *593 may extend to his knowledge of particular misconduct or acts of violence of the defendant in order to test the soundness of the witness's opinion. State v. Powell, 213 La. 811, 35 So.2d 741 (1948); State v. Thornhill, 188 La. 762, 178 So. 343 (1938); 98 C.J.S., Witnesses, § 387, pp. 153-161.
For the reasons assigned, the conviction and sentence are affirmed.
TATE, J., concurs and assigns reasons.
BARHAM, J., dissents with reasons.
TATE, Justice (concurring).
I concur, but with reservations as to the dispositions of Bill Nos. 5 and 7.
As to Bill No. 5, it is with some difficulty that I subscribe to the majority's holding that no error was committed by failing to excuse the juror for cause. Whatever his protestations of impartiality, the father of the legal secretary of an assistant district attorney is in the normal course of human nature not a juror likely to inspire confidence in his detachment. It seems to me unlikely, for instance, that a State challenge for cause of the father of a girl working for a law partner of the defense counsel would have been as lightly regarded.
Likewise, as to Bill No. 7, we find that the State's use of grand jury testimony to impeach a defense witness is regarded as harmless error, although we have held that the defense is not entitled to such impeaching testimony insofar as state witnesses are concerned.
In my view, both the defense and the State should have the right to impeach witnesses testifying at the trial by any inconsistency with their grand jury testimony. As to these witnesses, any purpose of grand jury secrecy no longer applies.
After indictment, the importance of grand jury secrecy as to those witnesses who testify at the trial is primed by the then more important value of fair trial for both the state and the accused. This value is better served by permitting this check upon truthfulness of trial testimony, rather than by permitting grand jury secrecy to be used to cloak present trial perjury or inaccuracy.
For these reasons, I concur.
BARHAM, Justice (dissenting).
I am unable to subscribe to the language contained in the majority's treatment of Bill of Exceptions No. 7 because I disagree with the application of a harmless error standard which I feel does not exist at Louisiana law.[1] However, I do concur in the disposition of that Bill of Exceptions. It is my opinion that the use of grand jury testimony for impeachment purposes should be allowed both the State and the defendant. See my dissent in State v. Terrebonne, 256 La. 385, 236 So.2d 773 (1970). However, I believe that Bill of Exceptions No. 8 presents reversible error, and on that basis, I must dissent from the affirmance of this defendant's conviction and sentence.
The majority states: "* * * The cross-examination of a character witness may extend to his knowledge of particular misconduct or acts of violence of the defendant in order to test the soundness of the witness' opinion. State v. Powell, 213 La. 811, 35 So.2d 741 (1948); State v. Thornhill, 188 La. 762; 178 So. 343 (1938); 98 C.J.S., Witnesses, § 387, pp. 153-161." (Emphasis supplied). I believe that the foregoing quoted statement is an incorrect statement of the law. Consistent with our statutory provisions regarding character witnesses, it is necessary that character evidence be confined to evidence reporting the accused's neighborhood or community reputation. La.R.S. 15:479 and La.R.S. 15:480.
*594 The question to which the defendant objected sought to determine whether the character witness had knowledge of certain previous incidents of violence. The majority determines that the question was not improper because the evidence sought may be used to "test the soundness of the witness's opinion." However, the issue is not the witness' opinion of the defendant's character. Once the "character witness" has been examined as to his acquaintance with the defendant and the members of the community in which the defendant lives (or works) and testifies that he has knowledge of the defendant's community reputation, his function is then to report what the community believes the defendant's reputation to be. The character witness has no opinion, legally speaking; he may never be asked his personal opinion and he has no right to relate his personal opinion.
The cases cited by the majority are distinguishable. In State v. Powell, 213 La. 811, 35 So.2d 741 (1948) the question asked the character witness on cross-examination sought to determine whether the witness had heard from within the community the collective opinion of which was the basis of the defendant's reputation as testified to by the witness, of specific prior arrests and indictments of the defendant. In that situation, the State was seeking to test the witness' ability to appraise the community's collective opinion of the defendant.[2] In State v. Thornhill, 188 La. 762, 178 So. 343 (1938), the inquiries were made of the defendant on cross-examination and were not attempts by the State to rebut the testimony of a witness testifying as to the good community reputation of the accused.
The trial court's allowance of this improper inquiry regarding the witness' knowledge of certain prior incidents of violent conduct was erroneous and prejudicial to the defendant. For that reason, I believe the majority errs in affirming the defendant's conviction and sentence.
For the reasons stated above, I respectfully dissent.
NOTES
[1] Effective January 1, 1975, women are no longer exempt from jury service. Art. 5, Sect. 33, La.Const. (1974); Rule 25, Rules of the Supreme Court of Louisiana.
[2] THE COURT: Let me examine the prospective juror, briefly. Mr. Catalano, do you honestly feel that, in spite of the fact that your daughter is employed by an Assistant District Attorney, that you can render an impartial verdict in this case, not favoring the state?

A Yes sir, for one reason and particularly one, she is married. Two, the other reason she doesn't legally live at home and we hear from her probably on the week end and I don't really hear from her regularly.
THE COURT: You don't think that would effect your partiality at all?
A No sir.
[1] See State v. Michelli, 301 So.2d 577 (La.1974), and State v. Johnny Ray Herman, 304 So. 2d 322 (La.1975).
[2] It must be noted that at the time this case was decided the arrests and indictments of any witness, were the defendant or not, could be used for impeachment purposes on cross-examination. In 1952, the provision was modified and the inquiry confined to prior convictions. Act 180, § 1, of 1952.