LOBRANO, Judge.
Defendant, Jesse Foster, was charged by grand jury indictment with the aggravated rape of his twelve year old stepdaughter, a violation of La.R.S. 14:42.
Defendant was arraigned on April 28, 1987 and pled not guilty. Trial was held on October 16, 1987. Defendant was found guilty of attempt aggravated rape. On October 28, 1987 he was sentenced to forty (40) years at hard labor with credit for time served.
*239 FACTS:
This case involves instances of repeated sexual abuse upon a twelve year old girl (hereinafter “K”) made by defendant, her stepfather. The first incident occurred when “K” was seven. Defendant entered her bedroom, got into her bed, mounted her and rubbed his penis against her vagina. “K” told her mother about the incident the following morning. As a result, defendant and “K’s” mother, Lynette Foster, separated for a brief period of time during which defendant sought counselling from his pastor. Defendant confessed his wrongdoing and asked forgiveness from his wife and “K”. Shortly thereafter, defendant returned to the household.
When “K” was approximately eight years old, defendant again went into her bedroom during the night while the rest of the family was asleep. He ordered her to undress. Then he undressed and inserted his penis into her vagina. “K” testified at trial that on this occasion defendant hurt her. She testified that she was sure penetration had occurred. She further testified that she fought back by slapping defendant. Defendant struck “K” knocking her off the bed. She struck the bed frame causing injury to her face. Again, the following morning, “K” reported this incident to her mother. As a result defendant and his wife had a bitter, heated argument. However, no action was taken against defendant.
Shortly after “K’s” ninth birthday defendant raped her again. This time he ejaculated inside her. Defendant threatened that if “K” told anyone he would kill her. Later that year, defendant raped “K” again. This time penetration occurred but not ejaculation. Again, defendant threatened “K” if she told anyone. Nevertheless, “K” told her mother. Again, heated argument resulted but no action was taken against defendant.
When “K” was eleven, defendant attempted to fondle her. “K” jumped to the other side of the bed. Her mother intervened. Another argument ensued but no action was taken against defendant.
The last attack occurred when “K” was twelve years old. Defendant inserted his finger into her vagina. Rather than tell her mother “K” ran away to the home of her maternal grandmother, Shirley Turrell, where she currently resides. Shortly thereafter, “K” began having trouble in school. She became rebellious, disruptive and defiant. In a conference with her teacher, she broke down and reported the many incidents of defendant’s sexual abuse. Her teacher testified that “K” had been a very good student with no behavior problems up until the day that she just “went off”. The teacher corroborated “K’s” testimony that defendant threatened her life and threatened to abuse her little brother if she told anyone about the sexual abuse. “K’s” grandmother, Shirley Tur-rell, also corroborated her testimony. She testified that her daughter, Lynette Foster, told her that “K” had complained of defendant’s sexual abuse.
Following an interview with “K” and her grandmother, child abuse detective, Tom Harrington, proceeded to defendant’s house. Detectives Harrington and Kopacz advised defendant of the investigation. Defendant refused to cooperate. He was arrested and advised of his Miranda rights.
Enroute to central lockup, defendant began to cry. He beseeched the detectives to allow him to make a statement. They proceeded to the Child Abuse Section office where the detectives waited for defendant to compose himself. Defendant was again given his Miranda rights. He signed the waiver of rights form and without promises or coercion gave a statement of his own free will. The statement was audio taped and transcribed. It was preceded by a less formal conversation between the detectives and defendant. Detective Harrington testified that defendant stated that “K” had given him “the look that little girls sometimes do; that this little girl gave him the looks.” Defendant admitted to Detective Harrington that he had intercourse with “K”.
Dr. Charles Preston examined “K”. He testified that the routine tests given to suspected rape victims were negative but *240 explained that this was not unexpected since it had been three weeks since the last sexual contact. He did note, however, that “K’s” hymen was absent and that her emotional state was consistent with that of a rape victim.
Three character witnesses testified for the defense. None had any independent knowledge of facts relevant to defendant’s guilt or innocence.
“K’s” mother, Lynette Foster, testified for the defense. During direct examination she testified that “K” was angry at defendant because of the social restrictions his religion placed on her. She denied any knowledge of defendant’s sexual molestations against “K” and claimed to “know” that defendant did not rape “K”. However, under cross examination, she admitted that “K” had reported sexual abuse by defendant. She also confirmed that she and defendant had separated on the advice of their pastor because of sexual abuse of “K” and that defendant was allowed to return to the home after he confessed and sought forgiveness.
Defendant took the stand in his own behalf. He denied any sexual contact with “K”. However, on cross examination, he admitted having told police that “K” grabbed his arm and “come on” to him “like a seducing woman”. Defendant testified that he understood that he did not have to make any statement to police and that the only words provided by the police were “sexual intercourse”, “penis” and “vagina”. The rest of the statement he admitted were his own words but denied they were “true” words. He consistently stated they were “false” words contending that he did not know what he was saying.
Defendant appeals his conviction and sentence asserting the following assignments of error:
1)The trial judge erred by instructing the jury during his supplemental charge as to the purpose and rulings on pre-trial motions involved in this case, particularly as to the court’s ruling on the admissibility of the alleged confession;
2) The trial judge erred when following a defense objection, he remarked, “It’s a good thing she wasn’t there that night.” —(referring to defense counsel) — reflecting the court’s opinion that defendant was guilty;
3) The trial judge erred by allowing “K’s” teacher to give hearsay testimony regarding what “K” told her about the defendant’s sexual abuse;
4) The trial court erred by imposing an unconstitutionally excessive sentence.
ASSIGNMENT OF ERROR 1:
Defendant asserts that by instructing the jury during its supplemental charge as to the purpose and rulings on pre-trial motions, the trial court committed reversible error by improperly commenting on the facts and evidence of the instant case.[1] We disagree.
A review of the supplemental jury charge indicates no such misconduct on the part of the trial judge. The jury foreman requested further instructions regarding the law as it pertains to arrests and Miranda warnings and a reiteration of the general charges given earlier.
In response to the further instructions on the arrest of the defendant, the trial court stated:
“THE COURT: That is really more of a factual question and I can’t comment on the testimony of the officer. You’ll have to remember what the officer said at the scene that he told him. For me to comment one way or the other, I think, would be commenting on the facts of the case, but the law does require that after a person is placed under arrest that they be transported and then within a relatively short period of time brought to central lockup and actually booked with the charge.
Once again, those are matters that we really deal with preliminarily before a trial. Motions can be made and a judge has to pass on those things before it ever gets to the trial posture. Once again, I’m prohibited from actually going into the facts of what actually happened.”
*241 In response to Miranda warnings, the trial court stated:
“THE COURT: In this case, there actually was the form that was admitted in evidence. The law does not require that the police officers actually execute a written form. The law requires at the time of arrest, the original arrest, that the police officers advise an arrested subject of his Miranda rights. They can do it orally, reading it from a card at the scene, or they can do it when they get him back to police headquarters. But he has to be advised of his Miranda rights before any statements that he makes can be used against him.
That advice, as I say, does not have to necessarily be done by the use of a formal form that he signs, but there has to be evidence that he was, in fact, advised of his rights and waived his rights and went ahead and made a statement.
If he made a statement in response to questioning by the police before the police ever advised him of his rights, then that’s another thing that the defense would file motions prior to trial to have those statements suppressed. A judge has to find that, in fact, he was advised of his rights and he did understand his rights and he did waive his rights. It’s only then that any statement that he makes can actually be introduced at the trial of the case.”
The trial judge did not charge the jury on the particular facts of this case, or draw any conclusions or assume that any fact had been proven. C.Cr.P. Art. 806; See, State v. White, 329 So.2d 738 (La.1976); State v. Thornhill, 188 La. 762,178 So. 343 (La.1938).
This assignment of error is without merit.
ASSIGNMENTS OF ERROR 2 AND 3:
These assignments of error are without merit. No contemporaneous objection was made by defendant to either of the remarks made by the trial judge, C.Cr.P. Art. 841; State v. Molinario, 400 So.2d 596 (La.1981), or to the hearsay testimony of “K’s” teacher. C.Cr.P. Art. 841; State v. Marcal, 388 So.2d 656 (La.1980), cert. den. 451 U.S. 977, 101 S.Ct. 2300, 68 L.Ed.2d 834 (1981) reh. den. 452 U.S. 973, 101 S.Ct. 3128, 69 L.Ed.2d 984; State v. Moran, 451 So.2d 48 (La.App. 4th Cir.1984), writ den. 456 So.2d 165. Thus, defendant has waived his right to raise these issues on appeal.
ASSIGNMENT OF ERROR 4:
Defendant asserts that his sentence of forty years (40) at hard labor constitutes a constitutionally excessive sentence in that it is not proportionate to the nature of the offense as he is a deeply religious man and the victim sustained no serious injury. Defendant argues that it is not likely that he would commit the crime again and that he would in all likelihood respond to rehabilitation. We disagree.
The Louisiana Constitution prohibits the imposition of excessive punishment Art. I, Sec. 20. The imposition of a sentence, although within the statutory limit, may violate a defendant’s constitutional right against excessive punishment that is enforceable by this court on appellate review. State v. Cann, 471 So.2d 701 (La.1985); State v. Thomas, 447 So.2d 1053 (La.1984); State v. Francosi, 511 So.2d 1181 (La.App. 4th Cir.1987); State v. Brumfield, 496 So.2d 425 (La.App. 4th Cir.1986), writ den. 503 So.2d 13 (La.1987).
A sentence which appears to be severe is considered excessive and unconstitutional if it is “grossly out of proportion to the severity of the crime” or “is nothing more than the purposeless and needless imposition of pain and suffering.” State v. Brogdon, 457 So.2d 616 (La.1984), cert. den. Brogdon v. Louisiana, 471 U.S. 1111, 105 S.Ct. 2345, 85 L.Ed.2d 862 (1985); State v. Telsee, 425 So.2d 1251 (La.1983).
The trial judge must articulate reasons for an apparently severe sentence tailoring it to the individual offender and the particular offense. State v. Tilley, 400 So.2d 1363 (La.1981); State v. Francosi, supra. Code of Criminal Procedure Art. 894.1 sets forth the criteria to be used by the trial court in its determination. The trial court need not articulate every circumstance cited, but it must indicate that it *242 considered the 894.1 guidelines in tailoring a particular sentence to a particular defendant convicted of a particular crime. State v. Gulden, 399 So.2d 194 (La.1981), cert. den. 454 U.S. 1150, 102 S.Ct. 1017, 71 L.Ed. 2d 305 (1982). Not only the aggravating circumstances, but the mitigating circumstances as well must be considered, State v. Franks, 373 So.2d 1307 (La.1979), cert. den. 450 U.S. 983, 101 S.Ct. 1520, 67 L.Ed. 2d 818 (1981), and the court must state the factual basis underlying its conclusion. State v. Saunders, 393 So.2d 1278 (La.1981). Accordingly, the sentencing record must reflect that the trial judge considered the personal history of the defendant in addition to the seriousness of the crime and the past criminal history of the defendant. State v. Quebedeaux, 424 So.2d 1009 (La.1982), affirmed on remand, 446 3o.2d 1210 (La.1984); State v. Jones, 398 So.2d 1049 (La.1981); State v. Molinet, 393 So.2d 721 (La.1981).
A review of the record shows the trial court adequately considered the Art. 894.1 guidelines in imposing this particular sentence upon this particular defendant convicted of this particular crime. State v. Gulden, supra.
Although not unbridled, the trial court is given great discretion in sentencing within statutory limits State v. Trahan, 425 So.2d 1222 (La.1983); State v. Bradley, 414 So.2d 724 (La.1982); State v. Washington, 414 So.2d 313 (La.1982).
Once adequate compliance with Art. 894.1 is found, the reviewing court must look to the facts and sentences of other cases to determine whether the sentence imposed is too severe in light of the particular circumstances of defendant’s case, keeping in mind that the maximum sentences should be reserved for the most egregious of offenders. State v. Cann, supra; State v. Brogdon, supra; State v. Francosi, supra; State v. Davis, 485 So.2d 981 (La.App. 4th Cir.1986), writ den. 488 So.2d 1019.
Insofar as the length of the sentence, our Supreme Court has evaluated a number of claims of excessive sentences by defendants convicted of attempted aggravated rape and has consistently affirmed such sentences.
In State v. Washington, 430 So.2d 641 (La.1983), the high court affirmed a maximum 50 year sentence of a defendant convicted of the attempted aggravated rape of a six year old girl. Here, as in the instant case, there was evidence of actual rather than attempted rape.
In State v. Howard, 414 So.2d 1210 (La.1982), the high court affirmed a maximum 50 year sentence for attempted aggravated rape and a thirty year sentence for aggravated burglary of a defendant convicted of the attempted aggravated rape of an eighty-six year old woman.
In State v. Simmons, 357 So.2d 517 (La.1978), the high court affirmed the 50 year consecutive sentences of a defendant convicted of 2 counts of attempted aggravated rape of 2 adult females.
In State v. Johnson, 354 So.2d 1036 (La.1978), the high court affirmed the fifty year sentence imposed pursuant to a plea bargain agreement of a defendant convicted of attempted aggravated rape. The court found that independent of the plea bargain, the sentence was not excessive.
In the instant case, we find the circumstances most egregious. Here, defendant committed numerous acts of sexual abuse, including actual rape, over a five year period. The victim, his stepdaughter, was under his care and protection at the time defendant committed these acts and defendant threatened to kill her if she disclosed what he had done.
Accordingly, we find defendant’s assertion that his forty year (40) sentence is excessive is without merit.
For the foregoing reasons, defendant’s conviction and sentence are affirmed.
AFFIRMED.

. Defendant’s objection was timely. See, State v. Mack, 403 So.2d 8 (La.1981).