PLOTKIN, Judge,
dissents with reasons.
The defendant, Tracey Bush, is entitled to a new trial because the trial court committed harmful error in this case when it permitted the State to impeach all of the defense witnesses with their grand jury testimony.
The Louisiana rule on the use of grand jury testimony to impeach credibility at trial is categorical. The principle is that grand jury testimony is secret and that testimony taken before a grand jury cannot be used at trial unless the issue at trial is perjury. State v. Ivy, 307 So.2d 587, 592 (La.1975). This canon was not established to protect the defendant or witnesses at a subsequent proceeding; rather it is intended to encourage free disclosure of information about the crime. Id.
The legislature has carved out two exceptions to this rule. The first exception permits disclosure to certain individuals, after an indictment, of any testimony concerning statutory irregularities in the grand jury proceedings. The second exception permits disclosure of grand jury testimony to show perjury. Neither of these exceptions apply to this cáse.
In State v. Terrebonne, 256 La. 385, 236 So.2d 773 (1970), reh’g denied (La.1970), after the defense concluded direct examination of the witness and tendered the witness for cross-examination, the State requested permission to use that witness’ grand jury testimony to show that her grand jury testimony was inconsistent with her testimony at trial. The objection of defense counsel was sustained and the State took writs to the Supreme Court. The Supreme Court relied on C.Cr.P. art 434 to support its finding that there is “a broad, but emphatic requirement that ‘all matters’ occurring before the grand jury be kept secret.” Id. at 776, and interpreted the exceptions to mean that grand jury testimony could be used only if the witness was tried for perjury. Id. at 777. The court noted that “to permit a violation of grand jury secrecy for the purposes advanced here would run counter to the strongest policy consideration supporting grand jury secrecy.” Id. at 776. The court refused to accept the State’s argument that the need for secrecy no longer existed since the indictment was found, the accused was in custody, and the grand jury was discharged. Id. at 777. Refusing to accept the State’s argument, the court noted that “[a]ny extension of the exceptions to secrecy announced in Article 434 would, in our opinion, immeasurably weaken the effectiveness of the grand jury as an inquisitorial body” and held “the tradition of the law requires that secrecy must prevail, unless it be dispensed with by a clear specific legislative mandate.” Id. at 777.
Further, C.Cr.P. art. 434, effective January 1, 1967, recognized only the two above-noted exceptions and did not recognize the right to use grand jury testimony to impeach a witness as an exceptions. Clearly, it was not the intent of the legislature to break the secrecy of grand jury testimony so that it could be used at trial to impeach witnesses. See Singerman, Use of Grand Jury Testimony to Impeach Credibility at Trial, 18 Loyola Law Review 468 (1971-72).
In State v. Ivy, 307 So.2d 587 (La.1975), the State referred to the witness’ grand jury testimony twice on cross-examination. The defense objected, arguing that grand jury testimony is confidential and that the State cannot use it to conduct its cross-examination. Id. at 592. The Supreme Court found the objection to be well founded, citing Terre-bonne, supra for it’s holding that “testimony taken before the grand jury cannot be used in a trial, other that a prosecution for perjury.” Id. at 592.
In State v. Ates, 418 So.2d 1326 (La.1982), the Supreme Court reiterated its position on the use of grand jury testimony to impeach, limiting the use to that which falls within the exceptions found in C.Cr.P. 434. Id. at 1329.
In this case, the critical factual issue was identification of the defendant as the miscreant, based on the credibility of his alibi witnesses. The State produced two witnesses who were friends of the decedent, who identified the defendant as the -person who killed the victim. No other evidence connected the defendant to the crime.
The defense produced the alibi testimony of the defendant’s mother, sister and neighbor. They testified that they were with the *83 defendant at home on the night of the crime. His mother and neighbor swore that while watching “Sanford and Son” on television, at approximately 2 a.m., they observed the defendant at home. The State used its prior grand jury testimony to impeach both witnesses, over defendant’s objections.
The State cross examined the defendant’s mother on her grand jury testimony that she did not have a working television set at home when the event occurred. The neighbor, Marion White, was impeached by her grand jury testimony because she failed to testify before the grand jury about certain aspects of the case. The defendant’s sister testified she brought a TV to her mother’s house and observed her brother at home on the night of the crime.
The State effectively impeached the witnesses by showing that the witnesses made prior inconsistent statements. The prior statements had the specific effect of refuting the testimony by the witness on the point in question. Once a witness has been contradicted on any point, the inference arises that he cannot be creditable on anything.
The use of the grand jury testimony violated La.C.Cr.P. art. 434 and the jurisprudence. Because the issue of believability was so close, the improper use of the grand jury testimony tipped the scales in favor of the State.
Another policy reason to maintain the rule is for the promotion of procedural fairness. Unlike civil cases, the State can, and usually does, subpoena all witnesses, including potential defense witnesses, to testify before a grand jury in a criminal case. The testimony given is secret and therefore is not commonly known by the defense. The defense has no opportunity to review the testimony prior to trial, and the testimony is not turned over to the defense before the witness testifies. As in this case, minor inconsistent statements may exist, or even more egregious inconsistencies might surface, which could be used to undermine the witness’s credibility, if admissible. The unfair effect is further compounded because the grand jury examination is under the complete control of the State, and the defense witnesses are unrepresented. Thus allowing use of the grand jury testimony to impeach the credibility of defense witnesses would be fundamentally unfair because the witness would be confronted for the first time without any prior opportunity to see the statement or learn of its contents until the State cross examines. The resulting damage, by the attacker, is devastating to the defendant in criminal cases. In cases involving only credibility, as in this ease, the effect was significantly harmful to the defendant. Without the use of the grand jury testimony to impeach the defense witnesses, the result might have been different.
I respectfully dissent and would grant the defendant a new trial.